ROBBINS, Plaintiff, v. CITY OF RAPID CITY et al, Defendants (Original Proceeding)

(23 N. W.2d 144)

(File No. 8733.  Opinion filed May 6, 1946.)

174

**Martens & Goldsmith,** of Pierre, for Plaintiff.

**H. R. Hanley,** of Rapid City, for Defendant Rapid City and its officers.

**Walter G. Miser,** of Rapid City, for Conservancy District.

KNIGHT, Circuit judge.

Plaintiff, a citizen and taxpayer of the City of Rapid City, has brought this original proceeding to enjoin and restrain the defendant city and its officers from carrying out the provisions of a contract executed on July 27, 1943, by said city, the United States, by the Secretary of the Interior, and the Rapid Valley Water Conservancy District, hereinafter referred to as the district, and to secure a declaratory judgment as to the validity and effect of said contract. The city has moved to dismiss on the ground that the complaint fails to state a claim upon which relief can be granted. The complaint sets forth the contract and the proceedings had by said city preceding such execution. The United States has declined to join as a party either plaintiff or defendant. The district has not submitted any brief. Plaintiff does not question the autrority of the Secretary of the Interior to enter into such contract, nor

the validity, nor sufficiency of the Congressional Enactments authorizing the same. The issue is one of law as between the plaintiff and the city.

The defendant city is a commissioned-governed municipal corporation with an assessed valuation in excess of $10,000,000 and outstanding indebtedness of less than $300,000. It has, at all times material herein, owned, managed and conducted a municipal waterworks plant and system, and has for a number of years last past received and will continue to receive therefrom an annual net income of over $55,000.

The contract comprises over thirty typewritten pages and it is unnecessary to set it forth in this opinion; its basic purpose and provisions, so far as the city is concerned, may be briefly summarized as follows: The United States agrees to construct a dam and storage reservoir of approximately 15,000 acre-feet capacity, in said contract and hereinafter referred to as the "joint works," in order to make a water supply available to the city, and stipulates that all water that becomes available through the construction and operation thereof shall be available to said city and district and that said city shall be allotted for domestic, municipal and industrial purposes a senior priority to and preferred use of 7,000 acre-feet to be released all as provided in said contract. The city, "for its supply of water," agrees to pay to the United States the sum of $500,000 in forty successive, equal, annual installments of $12,500 each, without interest, and operation and maintenance charges of the joint works. The obligation of the municipality, exclusive of such operation and maintenance charges, shall not exceed the cost of such joint works as finally determined by the Secretary of the Interior and shall in no event exceed the sum of $500,-000. Other provisions of said contract are hereinafter set forth and discussed.

Promptly upon the execution of the contract the United States began construction of the joint works and the same is now completed or nearing completion.

Plaintiff contends that said contract is ultra vires and void for the following reasons:

(a) The city had neither statutory nor implied power to enter into the contract;

(b) The city contracted a general obligation without making a previous appropriation therefor;

(c) The contract constitutes an illegal hypothecation of the city's water revenues;

(d) The city has no power to acquire real property for any purpose other than a public use or to sell any real estate without complying with the statutes;

(e) The contract was entered into by the city without calling for bids and without plans and specifications being prepared and filed in the office of the city auditor;

(f) Under the contract the city is deprived of the control of the supply of water for which it contracted;

(g) The provision not to assign avoids the contract.

■■ The Constitution and statutes of this state invest municipal corporations with certain powers; they have no powers other than those so granted and such as are incidental thereto. Where specific powers are so conferred a municipal corporation is vested with discretion as to the method of exercising such powers unless the method of such exercise is prescribed or limited by the Constitution or by legislative enactments. Erickson v. City of Sioux Falls et al., 70 S. D. 40, 14 N. W.2d 89.

SDC 45.0201 and amendments thereto, grants to each municipal corporation of this state broad general powers including the power: (1) To control its finances and property; (2) to levy and collect taxes for general special purposes within limits allowed by law; (3) to appropriate money for authorized purposes and provide for the payment of debts and expenses of the municipality; (35) to do what may be necessary or expedient for the promotion of health or suppression of disease; (48) to construct, operate, and maintain fire stations, fire engines, fire apparatus, and equipment, a system of fire signals, fire hydrants, and mains,

and a water supply for prevention and extinguishment of fires.

The statutes relied upon by the city as conferring power to enter into the contract are in part as follows:

SDC 45.0201(81), as amended by Chapter 194 of the Laws of 1941:

"To construct, establish, operate and maintain a system of waterworks and facilities in connection therewith; to regulate the distribution and use of water supplied thereby; to acquire a suitable supply of water, either within or without the municipality; to maintain dams, reservoirs, intakes, spillways, conduits, or other devices to gather and store surface, flood or other waters within or without the municipality either as a direct source of water to the municipality or as a supply of water from which any other source of the water supply of the municipality may be replenished or restored; to advantageously dispose of, to districts outside the limits of the municipalty to which the supply lines may extend, any municipal supply of water, including stored water, not required or used for municipal purposes, provided, however, any such surplus water may be disposed of to any outside district where the water is delivered into a natural water course for irrigation purposes; and to assess, levy and collect taxes and special assessments for such purposes, as provided by this title."

SDC 45.1405, as amended by Chapter 199 of the Laws of 1941:

"Except as otherwise provided no contract shall be made by the governing body of any municicpality and no expense shall be incurred by any department or any officer thereof, whether ordered by the governing body or not, unless an appropriation shall have been previously made concerning such expense, or the governing body authorized to issue bonds for a specific purpose.

"The governing body may enter into a contract for any term of years, not exceeding ten, with any person for the sale by him and purchase by the municipality of water, gas, or electricity, provided, however, that any contract entered

into with the United States Government, or any Agency or Department thereof, providing for the sale and purchase of water or the acquisition of a municipal water supply, may be for any term of years not to exceed forty. If such contracts shall extend for more than one year, an appropriation need not have been previously made concerning such expense, except sufficient to cover the amount payable or estimated to become payable under such contract for the first year thereof, and the governing body shall annually thereafter appropriate sufficient to cover the amount payable or estimated to become payable under such contract during the ensuing fiscal year.

"Such contracts shall be subject to referendum as ordinances."

The joint works are several miles from the city and from its waterworks system and will form no part thereof nor be connected therewith. The purpose of the joint works is to store and control the flow of the waters of Rapid Creek and make the same available for the use of the city. The contract is one whereby the city undertakes to pay the United States for making water available; it is a contract for the purchase by the city of water to be stored and released by the United States as therein provided. The joint works are to be constructed, owned, maintained and operated by and be under the control of the United States. The city acquires no interest therein. The benefits to be received and the obligations assumed by the city are substantially the same as if the joint works had been completed prior to the execution of the contract.

The cost of construction of the "joint works" and the cost of operation and maintenance thereof are used as a basis upon which, with limitations expressed in the contract, the water is to be paid for by the city.

SDC 45.0201(81), as amended and hereinbefore quoted, grants to municipal corporations the power "to acquire a suitable supply of water, either within or without the municipality." This granted power is separate, distinct and independent from other powers granted in the said

section. Plaintiff contends that under the contract the city does not "acquire" any supply of water; that "acquire" means obtain, procure, to get as one's own and that under the contract the city does not become the owner of any water or supply of water. With this contention we do not agree. Water when impounded and reduced to possession is personal property. 50 C. J. 763. When separated from its source it may be bought and sold like other commodities. 67 C. J. 675. In construing the words of the statute above quoted, we should consider the object and purpose thereof, and should give to the language used the apparent and natural meaning which will effectuate such object and purpose. Odson et al. v. Rogers, 47 S. D. 63, 195 N. W. 1019; Lawrence County v. Meade County, 6 S. D. 528, 62 N. W. 131; Brink v. Dann, Treasurer, et al., 33 S. D. 81, 144 N. W. 734.

■■ The word "acquire" has been variously defined. In its primary use it means to get as an owner, but in its broader sense it means to obtain in any manner. 1 C. J. 908; 1 C. J. S. 918. The very apparent legislative intent is to grant to municipal corporations the power to obtain water. The word "acquire" is here used in its broadest sense. The contract has for its purpose to provide water, "a suitable supply of water," for the use of the city; thereunder the city is to receive a supply of water and will become the owner thereof. It is entirely immaterial just when such ownership attaches. The water originally falls as rain, thereafter it finds its way into the stream above the dam and is stored in the reservior. We may assume, without deciding, that while it is so stored it has been "acquired" by and is owned by the United States. Its flow is then regulated and controlled and it is released and made available for the use of the city, which has a priority on 7,000 acre-feet as hereinbefore stated. When this water enters the city's mains either within or without the municipality it is under the control of the city and may be then said to have been acquired and owned by the city; such control and ownership is then as complete as if the city

owned the facilities for impounding the water and controlling its flow. See Ickes v. Fox, 300 U. S. 82, 57 S. Ct. 412, 81 L. Ed. 525. SDC 45.0201, as amended is an effective grant of power for this general purpose.

The statute relating to the necessity of provious appropriation is SDC 45.1405, as amended and hereinbefore set forth. The provisions of this section are clear and unambiguous, and specifically authorize the governing body to enter into a contract with the United States for the purchase of water for a term of not to exceed 40 years, and specifically provide that an appropriation need not have been previously made concerning such expense except sufficient to cover the amount payable or estimated to be payable under such contract for the first year thereof. The payments to be made by the city consist of two parts: the annual payments of not to exceed $12,500 and the annual payment to cover the cost of operation and maintenance, the amount of which is not and cannot be definately ascertained and determined by the contract. The first of such annual payments is to be made on "May 1 of the year immediately succeding the year in which water first becomes available for delivery to the Municipality * * *." It does not appear that any water has yet become available; if it becomes available during the present year, the city will become indebted therefor and be required to make its first payment on May 1, 1947.

According to the weight of authority a continuing contract for the furnishing of electric, water or other service to a municipality, for which the municipality agrees to pay in annual installments as the service is furnished, does not give rise to a present indebtedness for the aggregate amount of the installments to become due. 44 C. J. 1130. A long list of cases supporting this rule and a very few opposed thereto appears in the Note in 103 A. L. R. 1160. In the leading case of the City of Walla Walla et al. v. Walla Walla Water Company, 1898, 172 U. S. 1, 19 S. Ct. 77, 85, 43 L. Ed. 341, 349, the Court said:

"We think the weight of authority, as well as of reason, favors the more liberal construction, that a municipal corporation may contract for a supply of water or gas, or a like necessary, and may stipulate for the payment of an annual rental for the gas or water furnished each year, notwithstanding the aggregate of its rentals during the life of the contract may exceed the amount of the indebtedness limited by the charter. There is a distinction between a debt and a contract for a future indebtedness to be incurred, provided the contracting party perform the agreement out of which the debt may arise. There is also a distinction between the latter case and one where an absolute debt is created at once, as by the issue of railway bonds, or for the erection of a public improvement, though such debt be payable in the future by installments. In the one case the indebtedness is not created until the consideration has been furnished; in the other, the debt is created at once, the time of payment being only postponed.

Plaintiff relies upon Hesse v. City of Watertown et al., 57 S. D. 325, 232 N. W. 53, but that case presents a very different situation. In that case the city, without any election, had issued so-called revenue bonds for the construction of extentions and additions to its municipal light plant, pledging the revenue of the entire light plant for the payment thereof in installments of different amounts over a period of years, and provided for a receiver to administer the plant in case of default in payments of the bonds. An immediate debt was thereby attempted to be created for a local improvement, and the action of the city could not be sustained for reasons set forth in the opinion.

██ Before considering severally the provisions of the contract which are alleged to avoid it, we consider the contention of plaintiff that the contract in void because the election held was illegal by reason of being prematurely held and without proper notice. The city is not contracting either for the construction or purchase of a local improvement or any part thereof as contemplated by SDC Chapter 45.15. No present debt is incurred to make Article XIII,

Section 4, South Dakota Constitution, applicable. The contract does not stipulate for annual payments greater than five mills on each dollar of the assessed valuation of the city so as to bring it within the purview of SDC 45.1904 or SDC 45.1416. None of these constitutional provisions or legislative enactments requires a vote of the electors of the city to authorize the execution of the contract; its validity is not dependent upon any election nor the legality of the election held. In Spangler v. City of Mitchell, 35 S. D. 335, 152 N. W. 339, 341, Ann. Cas. 1918A, 373, it was said:

"It is clear, therefore, that the city without a vote may incur indebtedness within the 5 per cent. limitation for any municipal purpose when authorized by law which is not in conflict with any other provision of the Constitution, except that it may not issue bonds without such vote."

Article 14 of the contract provides for a submission of the same to a vote of the electors of the city. We may assume, without deciding, that this election was irregular. The city executed the contract and is bound by it and will not be restrained from complying with tis terms because of any irregularity or illegality in an election which the law did not require. As hereinbefore stated, the city is to pay, for its supply of water annually, in addition to the payments of $12,500 the amount of the "operation and maintenance charges" of the joint works. The amount of these charges cannot be definitely determined in advance; it is anticipated that it will not be large and we cannot assume that the total annual payments including this undetermined amount will equal or approximate the limitation provided by SDC 45.1904.

Plaintiff's contention that the contract constitutes an illegal hypothecation of the city's water revenues is based upon the provisions of Article 14 (c) of said contract which is as follows:

"All revenues received by the Municipality from the sale of water, exclusive of the portion thereof required for the operation and maintenance of that part of the Municipality's water system under its control and for the service

of existing debts incurred in connection with that system and exclusive of revenues received under Article 18 hereof, and the amount of any tax collected pursuant to levies made under paragraph (ii) of subsection (b) of this article shall be placed in a special fund to be known as the "United States Contract Fund." No part thereof shall be used by the Municipality for any purpose other than to discharge its obligations to the United States under this contract: Provided, That at any time funds have been accumulated in excess of the amount required to pay the installments of the construction cost and operation and maintenance charges next coming due hereunder, other uses of the excess funds may be approved by the Secretary."

SDC 45.1412 provides as follows:

"All money belonging to the municipality derived from taxation, licenses, fines, forfeitures, the operation of waterworks or other public utility owned or operated by it, or from any other source, shall be paid into the municipal treasury, and the governing body by the annual appropriation ordinance shall designate to what fund or funds such money shall be applied."

SDC 45.1413, as amended by Chapter 187 Laws of 1939, provides as follows:

"Except as herein provided no money belonging to any fund shall ever be diverted to the use of any other fund, and no warrant shall be drawn upon any fund not properly chargeable to such fund.

"If upon the expiration of any fiscal year there remains in any fund any cash balance, after paying all obligations of the municipality properly chargeable against such fund, the governing body by a unanimous vote may transfer such balance to such other fund as it may deem advisable. Provided however; that money transferred pursuant to this section shall not be expended for any purpose not provided for in the annual appropriation ordinance.

"No balance remaining at the end of any fiscal year in any fund raised for the purpose of paying the principal or

interest upon the bonded indebtedness of the municipality shall ever be transferred to any other fund so long as any bonded indebtedness continues to exist."

These provisions were considered in the case of Travaillie v. City of Sioux Falls, 59 S. D. 391, 240 N. W. 336, 337. It was there held that:

"There is no statutory requirement that the earnings from the operation of municipally owned waterworks shall be paid into a designated fund, but the governing body of a city or town is empowered to designate a fund or funds into which collections from such source shall be paid. Furthermore, there is no statute directing what application shall be made of the revenues derived from the sale of water, and there is no express statutory prohibition against the use of such revenue for purposes other than that connected with the operation of the waterworks system."

We further said:

"With the wisdom of vesting the governing body of a municipal corporation with discretion in designating the fund or funds into which the collections of a municipally owned public utility shall be paid and for what municipal purposes they shall be expended, this court is not concerned. Courts are not instituted for the purpose of passing upon the wisdom of legislation."

It will be noted that in Article 14 (c) the city agrees to place in the special fund to be known as the "United States Contract Fund" only revenues received in addition to the "portion thereof required for the operation and maintenance of that part of the Municipality's water system under its control and for the service of existing debts incurred in connection with that system * * *."

As hereinbefore noted, the city has contracted to pay for its supply of water annually. It will be necessary for the city, when water becomes available and the city is to become liable therefor, to provide for the payment of the same annually, and it is undoubtedly within the power of the governing body to create and place to the credit of a spec-

ial fund to be known as the "United States Contract Fund" the revenues received from the sale of water as well as taxes levied and collected, and to appropriate the same in the manner provided by law for the purpose of making such payments. The amounts to become due annually under the terms of the contract become general legal and binding obligations of the city enforceable as such, and it is immaterial to plaintiff and those similarily situated whether these annual payments be made from funds received from the sale of water or otherwise. The provisions of SDC 45.2310, as amended by Chapter 200 of the Laws of 1941, relating to the investment of funds for the payment of bonds and revenue bonds has no application to a fund such as is contemplated by the contract. It is the apparent intention of this contract that the amounts to be due thereunder shall be paid from this fund and that amounts accumulated in said fund in excess of the amount required to pay annual installments for water may be used for other municipal purposes to be determined by the city, and the Secretary of the Interior could not prevent this by any arbitrary refusal to approve such expenditure. The provisions of the contract above set forth and the creation of the special fund therein provided do not, in themselves, constitute a pledge of the revenues received or amounts placed in the fund, nor do they require the city to enact an ordinance pledging such revenues.

Article 27 of the contract provides that the city shall, at its own expense, negotiate for the purchase of all land and easements when and if advised by the Secretary of the Interior that the same are needed for the construction or operation of the joint works, and that upon procuring the execution of the necessary contracts, deeds, and any other papers, the city shall transmit the same to the United States and payment of the purchase price will be made by the United States in due course, if, in the opinion of the Secretary, the purchase price is reasonable. Said article further provides that in case any such needed land or easements cannot be purchased by agreement the city shall initiate and prosecute to completion the necessary condemnation

proceedings, the entire expense of which, including the payment of the award or purchase price, shall be borne by the city, and that the city shall thereafter convey such lands or easements to the United States upon terms and conditions and at prices satisfactory to the Secretary. As hereinbefore noted, the joint works are several miles from the city and its waterworks system. The purposes and methods for and by which a city may acquire real estate and also the circumstances under which and method by which a city may dispose of real estate are covered by specific statutes. Defendant asserts, and it is undisputed, that the United States has, without calling upon the city to do anything in connection therewith, secured all necessary lands and easements needed in connection with the construction of the joint works and that all questions relating to said article are now moot.

Article 12(b) provides as follows:

"If construction of said joint works is abandoned prior to the completion thereof by reason of the failure of the Municipality to perform those things on its part to be performed under the terms of this agreement, then the Municipality shall pay to the United States all monies expended from appropriations made directly pursuant to the authority contained in Section 12 (1) of the Amendatory Act plus such amounts from other Federal sources as the President may have determined to be reimbursable in the partial constrution of said joint works in forty (40) successive, annual installments, the first of which shall become due and payable on December 31 of the year following the year in which construction of said joint works is abandoned."

As hereinbefore stated, the joint works are completed or nearing completion so that any question relating to the validity of the section above quoted has undoubtedly become moot.

The plaintiff's next contention that the contract is illegal because entered into by the city without calling for bids and without plans and specifications being prepared

and filed in the office of the city auditor as required by SDC 45.15. This question is disposed of by what has hereinbefore been said as to the nature and purpose of the contract. The chapter relates to contracts for local improvements and has no application.

Chapter 300 of the Laws of 1939, as amended by Chapter 375 of the Laws of 1941 and by Chapter 319 of the Laws of 1943, is a general enactment applicable to all public corporations and requires the filing of specifications and advertisement for bids before entering into any contract of such public corporation for the construction of public improvements or for the purchase of materials, supplies or equipment involving the expenditure of $500 or more. The act itself provides, however, that it shall not apply to contracts for the purchase of electric power, light, water or gas.

■■■ Plaintiff's next contention that under the contract the city is deprived of the control of the supply of water is also predicated upon plaintiff's assertion that the contract is one for a public improvement, and plaintiff cites and relies upon the case of Ericksen v. City of Sioux Falls, supra, in which we held that a contract providing for the joint control of a sewer system by the City of Sioux Falls and the Morrell Packing Company was not authorized and void. This case is not in point here. The city is contracting for a supply of water to be stored and released by the United States so that the city may take the same from Rapid Creek throughout the year. As hereinbefore stated, the water becomes the property of and is under the complete and exclusive control of the city at the time it enters the mains of the city's water system.

■■■ Article 44 of the contract provides in part:

"No assignment or transfer of this contract or any part thereof or interest therein, whether voluntary or involuntary, shall be valid until approved in writing by the Secretary herein."

Plaintiff contends that this provision avoids the contract and relies upon SDC 45.1305, which requires an election "Before any sale, conveyance, lease, or operating

contract is made of any plant or equipment of any public utility owned by the municipality * * *." The "plant or equipment" of the Rapid City waterworks system consists of its systems of mains, hydrants, pumps and equipment for handling water which is the commodity furnished by the "utility." As hereinbefore noted, the "utility" to gather and store the water is owned, controlled and operated by the United States. The water is no part of the "utility" of the United States either before or when it is released from such utility for the use of the city, nor does the water become a part of the "utility" of the city at any time. It is the commodity distributed by the utility and without which the utility could not function. The statute has no application.

As already noted, two provisions of the contract which it is claimed avoid it have become moot and may not now be considered. Security State Bank et al. v. Breen et al., 65 S. D. 640, 277 N. W. 497; State of North Dakota ex rel. Strutz v. Perkins County, 69 S. D. 270, 9 N. W.2d 500.

▆▆▆ We conclude that the complaint fails to state a cause of action upon which affirmative relief can be granted to plaintiff but does state a justiciable controversy under the Declaratory Judgments Law, SDC 37.0101 et seq., and, therefore, the motion to dismiss will be denied. Cabell et al. v. City of Cottage Grove et al., 170 Or. 256, 130 P.2d 1013, 144 A. L. R. 286.

No costs will be taxed.

RUDOLPH, P.J., and ROBERTS and SICKEL, JJ., concur.

SMITH, J., dissenting.

KNIGHT, Circuit Judge, sitting for POLLEY, J.

SMITH, J. (dissenting).

It is my understanding of the intention of the parties, as revealed by their contract, that in consideration of a prior perpetual right to a stated quantity of water to be impounded by the joint works described therein, the municipality should become presently obligated to reimburse the United States for the costs of construction of such joint

works not to exceed the estimated amount of $500,000, payable in forty annual installments.

It was conceded at bar that a present debt in such an amount must be authorized by a majority of the electors of the municipality. Cf. Art. XIII, § 4, Constitution of the State of South Dakota. I am of the opinion that the attempted submission of the proposed debt to the electorate failed for the reason that the resolution calling the special election had not become effective at the time the purported election was held. I therefore respectfully dissent.