MILLAR, Appellant v. BARNETT, et al., Respondents

(221 N.W.2d 8)

(File No. 11443. Opinion filed August 30, 1974)

Order denying petition for rehearing October 7, 1974

Stephens, Riter, Mayer & Hofer, Pierre, for plaintiff and appellant.

Costello, Porter, Nelson, Heisterkamp & Bushnell, Rapid City, for defendants and respondents.

WOLLMAN, Justice.

Plaintiff, a resident taxpayer of Rapid City, South Dakota, filed a petition and application asking that the circuit court issue a permanent writ of prohibition forbidding the defendants, the Mayor and members of the Common Council of the City of Rapid City, (city) from entering into any arrangement or contract with Allison-Williams Company, or any trust indenture, lease, lease-purchase agreement, or contract or understanding of any kind with Rapid City Civic Center Plaza, Inc. Following trial, the circuit court entered a judgment denying the petition upon its merits. Plaintiff has appealed from the judgment.

On or about June 15, 1972, Mayor Donald V. Barnett and other individuals formed a nonprofit corporation, Rapid City Civic Center Plaza, Inc. (corporation) for the purpose of owning, operating, leasing, furnishing and maintaining for public use a civic center. Mayor Barnett served as vice chairman and then president of the corporation.

In March of 1972, the city enacted an ordinance which imposed an additional city sales tax of one-half percent for the purpose of land acquisition, construction costs, architectural fees and payment for a civic center facility, said tax to remain in effect until final payment on the purchase of said facility.

By a resolution adopted in December of 1972, one-half of the income derived from a 2% sales tax on certain sales was designated for the construction, maintenance and perpetual care of the civic center complex.

In November of 1973, Allison-Williams Company, an investment banking firm in Minneapolis, Minnesota, submitted a written proposal to the board of directors of the corporation outlining the terms under which the banking firm would underwrite the cost of constructing a convention center facility in Rapid City for the corporation. The proposal states that the cost of the facility (originally estimated at $8,500,000, but later estimated at $9,800,000) will be financed by issuing bonds to mature in a period not to exceed 20 years, said bonds to be secured by a mortgage on the building, the site, parking areas and landscaped area surrounding the project, and by a 20-year lease of the facility to the city. Said lease will be renewed annually automatically unless specifically not renewed at the beginning of each year for the next succeeding year. The proceeds of the special tax described above, together with any revenues produced by the facility, will be placed in a separate civic center fund and used to make lease payments as they come due and to pay the cost of operation and maintenance of the facility. Noncompliance with the terms of the lease on the part of the city will deny the city the use of the facility. Upon payment of the bonds according to their terms, the city will have the option of receiving title to the facility.

As of December 26, 1973, the assessed valuation of the taxable property in the city was $126,659,119. The outstanding bonded indebtedness of the city as of December 31, 1973, totaled $3,832,000.

Plaintiff contends that the proposed lease between the city and the corporation is in reality nothing more than a purchase of the facility and that by entering into the so-called lease the city will be incurring a debt in excess of 5% of the assessed valuation of the taxable property within the city, in violation of Art. XIII, § 4 of the South Dakota Constitution which, subject to exceptions which are not applicable here, provides that:

> "The debt of any county, city, town or civil township shall never exceed five per centum upon the assessed valuation of the taxable property therein, for the year preceding that in which said indebtedness is incurred. *  *  *"

Defendants, on the other hand, contend that the proposed lease between the city and the corporation is one that is authorized by SDCL 9-52-1.1 and that under the holding in McFarland v. Barron, 83 S.D. 639, 164 N.W.2d 607, the bonds issued to pay for the cost of the facility will not constitute a debt of the city.*

SDCL 9-52-1.1 (Ch. 53, Laws of 1972) provides that:

> "A municipality with a population of twenty thousand or over, in order to establish a municipal auditorium or convention center as defined and empowered by law, shall have the power to enter into a long-term lease, for a term not to exceed twenty years, with or without an option to renew or purchase, for the acquisition of such facilities. Such lease may be on both real and personal property, or either exclusively, and may cover the structure, site and contents, or structure

---

* Both sides agree that this case does not involve the special fund doctrine. Cf. Berven v. Board of Regents, 86 S.D. 741, 201 N.W.2d 218; Boe v. Foss, 76 S.D. 295, 77 N.W.2d 1; and State College Development Ass'n v. Nissen, 66 S.D. 287, 281 N.W. 907.

and contents only, with or without furniture and equipment and may provide for erection of the structure upon a site owned by the municipality. A lease may be entered into for an existing building or for one to be erected in the future. Rent paid under the terms of the lease may be paid from the general funds of the municipality or may be paid from any fund established for maintenance of such a facility or construction of same by the municipality."

In the McFarland case this court held, two judges dissenting, that bonds issued by the South Dakota Building Authority for the purpose of providing funds for the construction and equipping of a classroom and auditorium building at one of the state colleges and a dining facility at the State Training School, said buildings to be leased by the Authority to agencies of the State of South Dakota, did not constitute a debt of the State within the meaning of Art. XIII, § 2 of the South Dakota Constitution.

We think that the decision in McFarland v. Barron compels the conclusion that the proposed lease in the instant case will not result in an indebtedness on the part of the city within the meaning of Art. XIII, § 4 of the South Dakota Constitution. We recognize, of course, that persuasive arguments can be made that this type of lease arrangement between a governmental entity and a so-called independent second party owner-lessor which results in the acquisition of property by the governmental entity at the conclusion of the lease period is nothing more than an assumption of an unconditional obligation of the underlying bonded indebtedness by the governmental entity within the meaning of the constitutional proscription. These arguments were clearly set forth in the McFarland case, however, and a majority of the court chose to adopt a contrary view. Although plaintiff has asked that we overrule the McFarland case if necessary in order to hold that the proposed transaction in the instant case violates the constitution, we decline to do so in view of the fact that the court made what was obviously a considered judgment on a question of significant public interest.

Plaintiff argues that the instant case is distinguishable from the McFarland case in several respects. First, he contends that the

statutes which authorized the construction of the two buildings involved in the McFarland case (Chs. 217 and 218, Laws of 1968) specifically stated that no indebtedness, bond or obligation incurred or created under the authority of the statutes should become a lien, charge or liability against the State of South Dakota nor against the property of the funds of the State of South Dakota within the meaning of the Constitution of South Dakota, whereas the statutory authority for the city to enter into the long-term lease with the corporation, SDCL 9-52-1.1, supra, contains no such disclaimer of indebtedness. We think that this difference is without legal significance. The real issue is whether the lease between the city and the corporation will result in the corporation's bonds becoming a general obligation of the city and thus a debt within the meaning of Art. XIII, § 4 of the South Dakota Constitution. We conclude that it will not. McFarland v. Barron, supra; In Re Oahe Conservancy Subdistrict, 85 S.D. 443, 185 N.W.2d 682; Robbins v. City of Rapid City, 71 S.D. 171, 23 N.W.2d 144.

Plaintiff points out that the proposed lease in the instant case is automatically renewable unless the city takes affirmative action not to renew the lease at the beginning of each year, whereas the leases in the McFarland case were automatically renewable only if an appropriation for the purpose of paying the annual rentals from available appropriations was made by the state each year. Again, we do not believe that this difference in the leases is of any legal significance.

Finally, plaintiff argues that the instant case is distinguishable from the situation in the McFarland case because the statute authorizing the long-term lease, SDCL 9-52-1.1, supra, does not specifically authorize the lessor to lease the facility to others in the case of nonpayment of rent by the city, whereas the statute authorizing the State Building Authority to enter into leases with state agencies provided that the property could be leased to others in the event of nonpayment of rents by the lessee. SDCL 5-12-17 (Ch. 276, § 5, Laws of 1967). Again, we see no legal significance in this alleged distinction between the two cases. The proposed lease in the instant case would deny the city the right to use the facility. That being the case, it would seem to be of no legal significance whether or not the lessor would or would not

attempt to lease the facility to others. The practical significance, of course, is that, as was pointed out in the dissent in the McFarland case, it is highly unlikely that the lessor could find a third party who would agree to lease the facility.

On the basis of our decision in McFarland v. Barron, supra, and other cases cited above, we hold that the proposed lease between the city and the corporation will not result in the assumption by the city of an indebtedness within the meaning of Art. XIII, § 4 of the South Dakota Constitution. We intimate no view, of course, on what our holding might be if there were any changes in the terms of the proposed lease.

The judgment denying the application for the writ of prohibition is affirmed.

DUNN, J., concurs.

BIEGELMEIER, C. J., WINANS, J., and RENTTO, Retired Judge, concur specially.

BIEGELMEIER, Chief Justice (concurring specially).

My philosophy and views on the constitutionality of this method of financing public improvements are amply and I believe cogently set forth in my dissents in both the McFarland v. Barron and Berven v. Board of Regents opinions cited by Justice Wollman. I was a dissenter with Judge Rentto in McFarland and a dissenter with Justice Winans in Berven. Now that those views represent a majority, we are faced with the problem of overruling them prospectively. For reasons of adhering to precedent, I cast my vote for affirmance, but the expressions set forth in those dissents are sound and it may be that the court in the future will weigh the two views, i. e., soundness of reasoning against precedent and find the weight in favor of the former. I, therefore, concur in the result.

WINANS, Justice (concurring specially).

I concur in the opinion written by Justice Wollman for this Court for the reason that McFarland v. Barron cited in the opinion as the basis for the holding is the law in South Dakota.

Had I been on the Court when it was decided, I would have joined in the dissent which would then have been the majority opinion. However, opinions of this Court must not shift with the winds or the economic predilections of changes in personnel. I wrote a dissent in Berven ·v. Board of Regents, referred to in Justice Wollman's footnote, which case sets forth my own feeling about the indebtedness prohibited by the Constitution. In my humble opinion we have just simply been busily engaged in chipping away at the Constitution on this issue and we have pretty well emasculated it. All this, of course, since Boe v. Foss, cited in the same footnote. By so doing, we have established what to me is the rule of law on which people have a right to rely and that settles it. To now overrule McFarland, supra, would be a disservice to the business world and the legal profession. Stare decisis still means something to me.

RENTTO, Judge* (concurring specially).

I did not join with the majority in McFarland v. Barron and still regard my dissent as sound. However, since that decision is the law until it is overruled, and is here controlling, I concur.

---

* Retired Supreme Court Judge acting under authorization pursuant to S.L. 1974, Ch. 154, § 4.