2004 SD 136

**Burnell OLESEN and Mary E. Olesen, Plaintiffs and Appellees,**

**v.**

**TOWN (City) OF HURLEY, Defendant and Appellant.**

**No. 22934.**

Supreme Court of South Dakota.

Considered on Briefs June 1, 2004.

Decided Dec. 29, 2004.

325

Samuel M. Goodhope of Moore, Rasmussen, Kading, and Kunstle, Sioux Falls, South Dakota, Attorneys for plaintiffs and appellees.

Timothy W. Bjorkman of Bjorkman & Fink, Bridgewater, South Dakota, Attorneys for defendant and appellant.

ECKRICH, Circuit Judge.

[¶ 1.] City of Hurley (City) appeals 1) the trial court's determination that it was not entitled to summary judgment on the issue of sovereign immunity and 2) the trial court's grant of partial summary judgment to Burnell and Mary E. Olesen (Olesens) holding that City's operation of a restaurant was an ultra vires act. We affirm.

## FACTS

[¶ 2.] Olesens operated Little Philly's Café in Hurley, South Dakota from the mid–1980s until 1998. From 1995 until this lawsuit commenced in 1998, the City sold food within the confines of the·Hurley Municipal Bar.[1] Little Philly's and the bar were the only two competing food service establishments in Hurley.[2] City's restaurant served alcohol; whereas Olesens' did not.

[¶ 3.] The parties co-existed peacefully together until 1995 when City expanded its food preparation and service facilities. The expansion allowed City to offer full course meals. City's menu included lunch and supper—offered six days a week-featuring steaks, salads, potatoes, a variety of hot sandwiches, various appetizers, and other hot food. The expansion of City's menu was a substantial departure from its past offerings of potato chips, chislic, and snack food.

[¶ 4.] On April 28, 1998, Olesens filed a complaint against City alleging City's op-

eration of its restaurant was an ultra-vires act that unfairly competed with their business. City denied the allegations in the Olesens' complaint. At this time, City was insured with EMC Insurance Company (EMC).

[¶ 5.] Thereafter, on March 25, 2000, the trial court granted Olesens' motion for partial summary judgment determining that as a matter of law City's service of food in its restaurant was an ultra-vires act. However, the question of damages was left for a jury determination. Following a lengthy hiatus, the case was scheduled for a jury trial to commence on April 2, 2003.

[¶ 6.] On March 10, 2003, three weeks before trial, City filed a motion for summary judgment.[3] City's summary judgment motion, filed after five years of litigation, alleged that City was immune from liability pursuant to SDCL 21–32A–1 and 3. This was the first time the sovereign immunity defense was raised. The only evidence presented by City in support of its motion for summary judgment was an affidavit from the City Finance Officer Tracy Hummel. This affidavit provided in pertinent part: "The City of Hurley received a letter from EMC, our insurance company, dated March 29, 2000, in which EMC informed the City it was withdrawing its insurance defense and any potential indemnity on the Olesens' claim for the reason that the·trial court ... had granted the Olesens summary judgment as to·lia-

---

1. Food is "any raw, cooked, or processed edible substance, beverage, or ingredient used or intended for use or sale, in whole or in part, for human consumption." SDCL 34–18–1(4).

2. A food service establishment is a term describing any place "in which food or drink is prepared for sale or service to the public." Both food service establishments are fairly denominated restaurants. SDCL 34–18–1(5).

3. City's motion was denominated motion for failure to state a claim upon which relief may be granted and for summary judgment. City submitted an affidavit in support of its motion(s). The motion is properly deemed a motion for summary judgment. *See* SDCL 15–6–12(c).

bility on the grounds that the City's conduct was ultra-vires as a matter of law."

[¶ 7.] The trial court denied City's motion for summary judgment. A jury trial commenced on the issue of damages and the jury returned a verdict for the Olesens. After trial, City renewed its sovereign immunity defense through post-trial motions. Through these post-trial motions City added its EMC insurance policies into the record. In effect, City was asking the trial court to hear a declaratory judgment action after the adverse jury verdict. The trial court denied City's renewed motions for summary judgment. City appeals raising the following issues:

> Whether sovereign immunity shielded City from liability.

> Whether City's express authority to operate a municipal bar implied authority to operate a restaurant.

## STANDARD OF REVIEW

[¶ 8.] City appeals both the grant and denial of the summary judgment motions. Our standard of review on summary judgment is well-settled.

> We must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Cromwell v. Rapid City Police Department*, 2001 SD 100, ¶ 7, 632 N.W.2d 20, 23. "[S]ummary judgment will be affirmed 'only when there are no genuine issues of material fact and the legal questions have been correctly decided.'" *Casazza v. State*, 2000 SD 120, ¶ 8, 616 N.W.2d 872, 874. Additionally, whether City is protected by sovereign immunity is a question of law, reviewed de novo. *Hansen v. South Dakota D.O.T.*, 1998 SD 109, ¶ 7, 584 N.W.2d 881, 883.

## ANALYSIS AND DECISION

### ISSUE ONE

[¶ 9.] **Whether sovereign immunity shielded City from liability.**

[¶ 10.] During the course of this matter City asserted the defense of sovereign immunity at two stages of the proceedings: First, three weeks before trial; second, three weeks after trial.

[¶ 11.] City claimed immunity from Olesens' suit pursuant to SDCL 21–32A–1. That statute provides in pertinent part: "To the extent that any public entity ... purchases liability insurance and to the extent that coverage is afforded thereunder, the public entity shall be deemed to have waived the common law doctrine of sovereign immunity and shall be deemed to have consented to suit." SDCL 21–32A–1. The terms of SDCL 21–32A–1 are unambiguous. Therefore, City faced liability to the extent coverage was afforded by its insurance coverage and was deemed to have waived its sovereign immunity in that respect. *Cromwell*, 2001 SD 100, ¶ 17, 632 N.W.2d at 25.

[¶ 12.] Although City claims that the affidavit of the finance officer established as a matter of law the extent of the insurance coverage afforded to City, that assertion is unsupported by the record. SDCL 15–6–56(e) requires that affidavits be

based on personal knowledge and supported by facts that would be admissible into evidence. Mere conclusory allegations are not substitutes for specific facts. The finance officer's affidavit only established that EMC denied coverage to City. This affidavit did not establish, as a matter of law, the extent of City's insurance coverage. Therefore, the trial court's decision denying City's first motion for summary judgment is affirmed.

[¶ 13.] Following trial of this matter, City renewed its sovereign immunity defense by way of a second motion for summary judgment. This time, City's motion included an affidavit which authenticated its EMC insurance policies. However, this motion was not timely made. Sovereign immunity is an affirmative defense. SDCL 21–32A–3. Motions to dismiss for failure to state a claim and for summary judgment must be made before trial. SDCL 15–6–12(c).[4] The question of sovereign immunity is an issue that "should be resolved as early as possible." *Swedlund v. Foster*, 2003 SD 8, ¶ 12, 657 N.W.2d 39, 45. The trial court's denial of

City's post-trial motion for summary judgment is affirmed.

## ISSUE TWO

[¶ 14.] **Whether City's express authority to operate a municipal bar implied authority to operate a restaurant.**

[¶ 15.] Municipalities "possess only those powers conferred upon them by the Legislature ... [but] a grant of authority includes those incidental or implied powers that are necessary to enable a municipality to perform the function authorized." *City of Rapid City v. Rensch*, 77 S.D. 242, 90 N.W.2d 380, 383 (S.D.1958); *Ericksen v. City of Sioux Falls*, 70 S.D. 40, 14 N.W.2d 89 (1944).[5] This is a fundamental rule of statutory construction known as "Dillon's Rule."[6] It is a rule of strict construction. The rationale for the strict construction of a municipalities' powers is because a "city, as such, has no inherent powers, and none of the attributes of sovereignty." *Ericksen*, 70 S.D. at 53, 14 N.W.2d at 95. Historically, South Dakota cases which have considered the scope of a

---

4. SDCL 15–6–12(c) provides in pertinent part: "After the pleadings are closed but *within such time as not to delay the trial,* any party may move for judgment on the pleading." (emphasis added).

5. We respectfully disagree that *Snow Land, Inc. v. City of Brookings*, 282 N.W.2d 607, 608 (S.D.1979), specifically rejected the Dillon doctrine. In a case decided after *Snow Land*, *Brookings–Lake Telephone Company v. City of Brookings*, 430 N.W.2d 575, 577 (S.D.1988) we said:

> We do not question City's ability to provide for orderly expansion through annexation, but as a statutorily created entity, City's powers are limited to express or implied statutory powers. *City of Rapid City v. Rensch*, 77 S.D. 242, 90 N.W.2d 380 (1958). As this Court stated in *Robbins v. City of Rapid City*, 71 S.D. 171, 176, 23 N.W.2d 144, 147 (1946): The Constitution and stat-

utes of this state invest municipal corporations with certain powers; they have no powers other than those so granted and such as are incidental thereto. Where specific powers are so conferred a municipal corporation is vested with discretion as to the method of exercising such powers unless the method of such exercise is prescribed or limited by the Constitution or by legislative enactments.

*Brookings–Lake Telephone Co.*, 430 N.W.2d at 577.

6. Judge Foster Dillon was a late nineteenth century Iowa jurist and government law scholar. The appellation "Dillon's Rule" is derived from two cases he authored: *Merriam v. Moody's Executors*, 25 Iowa 163 (Iowa 1868); *City of Clinton v. Cedar Rapids and M.R.R. Co.*, 24 Iowa 455 (Iowa 1868); *Blacks Law Dictionary*, 469 (7th ed West 1999); David J. Barron, Reclaiming Home Rule, (116 Harv L Rev 2255 (2003)).

City's implied powers have applied a reasonably strict standard. *See id.* at 95. ("The policy of the law is to require of municipal corporations a reasonably strict observance of their powers."). In practice, a reasonably strict standard is, in part, a recognition that the scope of a City's implied powers will depend upon the circumstances of each case.

[¶ 16.] However, other rules of statutory construction may also apply when looking to the statutory grant of authority. For example, "in construing statutes, the terms of a statute relating to a particular subject will prevail over general terms of another statute." *Donovan v. City of Deadwood,* 538 N.W.2d 790, 793 (S.D.1995). Additionally, the specific language of an enabling statute can make a difference. For example, "[t]he power to issue bonds for a specific purpose excludes the possibility of an implication of power to issue bonds for other purposes." *State ex rel Jacobsen v. Hansen,* 75 S.D. 476, 480, 68 N.W.2d 480, 482 (1955). Likewise, when municipalities' police powers are involved they are also strictly construed. *See City of Sioux Falls v. Peterson,* 71 S.D. 446, 25 N.W.2d 556, 557 (S.D.1946) ("It is a principle settled by the concurrence of many authorities that acts of the state legislature granting the police power to municipal corporations ... will be strictly construed."). On the other hand, if the legislature's intention is comprehensive and unambiguous, the courts will not interfere unless City's action was inappropriate and unreasonable. *See id.* at 557 (recognizing the municipal authority to regulate traffic implies broad authority.)

[¶ 17.] With these principles in mind, the inquiry here is whether, under the undisputed facts of this case, the City's statutory authorization to operate a bar implied a necessary power to operate a restaurant in that bar?

[¶ 18.] City's express authority to operate a bar is found in SDCL 9–29–6. That statute provides: "Every municipality shall have powers to engage in retailing alcoholic beverages as provided in Title 35." SDCL 9–29–6. The parties have spent a fair amount of time arguing about acceptable bar food versus non-acceptable bar food. The focus is not whether potato chips, chislic or snack foods are or are not acceptable bar food. This decision concentrates its focus on the scope and nature of City's restaurant operation. Here, City, under the guise of a municipal bar, offered full-course lunch and supper meals six days a week. City's expanded restaurant operation was only made possible because of its decision to upgrade, renovate, and expand commercial kitchen facilities. Additionally, in 1998 when this lawsuit was commenced, City's revenue from food was nearly $67,000. City's revenue from on-sale beer was $46,742. City's revenue from on-sale liquor was $7,923. These figures do not suggest that City's restaurant business was merely incidental to its bar business.

[¶ 19.] City has an on-sale liquor license granted to it by express statutory authority. This license clearly gives City the power to sell alcohol upon the premises. However, City's express power to sell alcohol by the glass does not, in these circumstances, imply a necessary power to operate a restaurant. The trial court's decision is affirmed.

[¶ 20.] KONENKAMP and ZINTER, Justices, concur.

[¶ 21.] MEIERHENRY, Justice, concurs with writing.

[¶ 22.] GILBERTSON, Justice, dissents.

[¶ 23.] ECKRICH, Circuit Judge, for SABERS, Justice, disqualified.

MEIERHENRY, Justice (concurring).

[¶ 24.] I concur with the majority opinion on both issues. The legislature has authorized a municipality to operate an on-sale liquor establishment. It has not authorized a municipality to operate a restaurant. Whether, or to what extent, cities should be able to serve meals in conjunction with selling liquor is a policy decision best left to the legislature.

[¶ 25.] I also would affirm the trial court's decision in denying the City's belated defense of sovereign immunity. In addition to the defense being untimely, operating a bar is not a governmental activity subject to the defense of sovereign immunity. We have consistently held that sovereign immunity does not apply to a business enterprise run by the government. *See Aune v. B–Y Water District,* 464 N.W.2d 1, 2–5 (S.D.1990); *L.R. Foy Const. Co., Inc. v. South Dakota State Cement Plant Com'n,* 399 N.W.2d 340, 346–49 (S.D.1987); *Oien v. City of Sioux Falls,* 393 N.W.2d 286, 290–91 (S.D.1986).

GILBERTSON, Chief Justice, (dissenting).

[¶ 26.] I respectfully dissent. I would reverse the lower court on Issue 2. I would hold the trial court erred when it granted partial summary judgment to Olesens, holding City's operation of food service at the municipal bar was an ultra vires act.

[¶ 27.] An express grant of authority from the legislature "includes those incidental or implied powers that are necessary to enable a municipality to perform the function authorized." *City of Rapid City v. Rensch,* 77 S.D. 242, 246, 90 N.W.2d 380, 383 (1958) (citation omitted). A municipality is vested with discretion as to how it exercises specific powers conferred upon it by the legislature, as long as the methods employed are not limited by

either the state constitution or the legislature itself. *Robbins v. Rapid City,* 71 S.D. 171, 176, 23 N.W.2d 144, 147 (1946) (citation omitted). Municipalities are precluded from engaging in ultra vires acts for which there is no antecedent legislative authority. *Ericksen v. City of Sioux Falls,* 70 S.D. 40, 53, 14 N.W.2d 89, 95 (1944).

[¶ 28.] "Our Court has a history of not interfering with municipal governments unless their actions are palpably arbitrary, unreasonable, or beyond their authority." *City of Marion v. Schoenwald,* 2001 SD 95, ¶ 7, 631 N.W.2d 213, 216 (citations omitted). We have on several occasions upheld a municipality's incidental acts exercised in the course of its express authority. *See Snow Land, Inc. v. City of Brookings,* 282 N.W.2d 607, 608 (S.D.1979) (holding municipality's express authority to prohibit all Sunday liquor sales under SDCL 35–6–30 included implied authority to also ban low-point beer Sunday sales, despite state's proscription under SDCL 35–4–81 which prohibited sales of low-point beer sales on Sunday between certain hours); *City of Vermillion v. Hugener,* 75 S.D. 106, 109, 59 N.W.2d 732, 734 (1953) (holding municipality had implied authority to enter into a long term contract to establish a golf course although state statute did not specifically grant authority to establish golf courses as public parks). Actions taken under a municipality's implied or incidental authority will be upheld when the actions have a basis in express authority and are reasonable, further the general law, and are not in conflict with the general law. *Snow Land, Inc.,* 282 N.W.2d at 608.

[¶ 29.] City's express authority to operate the municipal bar is granted under SDCL 9–29–6, which provides: "Every municipality shall have powers to engage in retailing alcoholic beverages as provided in Title 35." The issue of incidental food

service conducted at a municipal retail alcoholic beverage operation is not addressed within the statute, or the statutory scheme. Lacking expressly defined operational methods, incidental and implied acts necessary to the operation of a municipal bar are permitted, as long as those acts are reasonable and do not conflict with the general law. *See Snow Land, Inc.*, 282 N.W.2d at 608; *Hugener*, 75 S.D. at 109, 59 N.W.2d at 734.

[¶ 30.] Today the Court bases its decision on a nineteenth century rule of law known as "Dillon's Rule." At one time earlier in its history, South Dakota did follow such a rule.

> It is well settled that a municipal corporation has only such powers as are clearly and unmistakably granted to it by its charter or by other acts of the Legislature, and consequently can exercise no powers not expressly granted to it, except those which are necessarily implied or incident to the powers expressly granted and those which are indispensable to the declared objects and purposes of the corporation.

*Ex parte McAlpine*, 47 S.D. 472, 474–75, 199 N.W. 478, 479 (1924). *See also Rensch*, 77 S.D. 242, 90 N.W.2d 380; *Ericksen*, 70 S.D. 40, 14 N.W.2d at 89. However in *Snow Land* this Court specifically rejected this ancient doctrine. 282 N.W.2d 607. *Snow Land* is factually similar in that it deals with the authority of a municipality to regulate the sale of alcoholic beverages. The Court fails to follow *Snow Land* and does not say why it opts to return South Dakota to the mid-nineteenth century.

[¶ 31.] The record indicates City began serving a limited food menu in 1979 in conjunction with its bar operation. City's municipal bar food service was not advertised to the general public, or to patrons inside the bar. The menu was made available to bar patrons only while on site.

[¶ 32.] Menu items such as hamburgers, french fries, chislic, and other grill items were added to the bar menu over time. A modern grill was installed in 1995 as part of a capital project designed to bring the bar into compliance with health and safety codes. When soup was added to the menu, Olesens complained to City and soup service was immediately discontinued. No complaint about the grill service was ever offered by Olesens prior to the commencement of their law suit. A full service, sit down restaurant menu was never offered by City.

[¶ 33.] City offered testimony at trial that bar revenues from on-sale beer and liquor and off-sale beer and liquor were insufficient in and of themselves to keep the bar in operation. The bar was not financially viable without the food service revenue. Additionally, City noted that the consumption of food with alcohol slows the absorption rate of alcohol into the blood stream as support for its efforts to provide bar patrons with limited food service while consuming alcohol.[7]

---

7. Alcohol travels to the stomach and then to the small intestine where it is absorbed into the bloodstream. Alcohol absorbed into the bloodstream eventually reaches the brain and central nervous system, at which point the characteristic signs of alcohol intoxication begin to show. The rate of absorption depends on a variety of factors, especially the presence and type of food in an individual's stomach at the time alcohol is ingested. Foods with a higher fat content, such as a hamburger or fried foods, take longer for the stomach to digest, and decrease the alcohol absorption rate. Jennifer L. Pariser, Note: *In Vino Veritas: The Truth About Blood Alcohol Presumptions in State Drunk Driving Law*, 64 NYUL-Rev 141, 151 (1989) (citing R. Erwin, Defense of Drunk Driving Cases Criminal/Civil § 15.04[1][b][i] at 15 (3d ed.1988); Bayly & McCallum, Some Aspects of Alcohol in Body

[¶ 34.] The effect of this Court's decision is devastating to the numerous small towns in this state that have only a municipal bar as a source of food as well as liquor. Prior to 1998, the town of Hurley had two eating establishments, the one owned by Olesens and the other run by the City. Olesens shut down in 1998 and this decision effectively shuts down the City's food service. In light of this decision, what other small town will dare to offer food to the public at its municipal liquor establishment and open up its public treasury in the process? I doubt the legislature intended such a result when it contemplated the authority it would grant to municipalities.[8]

[¶ 35.] All these factors taken together indicate the food service operation was merely incidental to the bar operation as a revenue enhancement and bar patron satisfaction and safety measure. City's incidental food service was properly conducted under City's express authority to operate a municipal bar.[9]

[¶ 36.] The Court's assertion that City's express power to sell alcohol by the glass does not imply a *necessary power* to sell food by the plateful is not a correct statement of the law or the facts of this case. City's express power to sell alcohol by the glass confers upon it the implied and incidental powers to do what is necessary to operate the municipal bar within reasonable limits, and those explicitly imposed by the legislature and the state constitution. City's limited food service oper-

---

Fluids. Part II: The Change in Blood Alcohol Concentration Following Alcohol Consumption, 2 Med. J. Austl. 172, 173 (1959); Fitzgerald & Hume, The Single Chemical Test for Intoxication: A Challenge to Admissibility, 66 Mass. L.Rev. 23, 29 (1981); Holt, Stewart, Adam & Heading, Alcohol Absorption, Gastric Emptying and a Breathalyzer, 9 Brit. J. Clinical Pharmacology 205, 207 (1980); Sedman, Wilkinson, Sakmar, Weidler & Wagner, Food Effects on Absorption and Metabolism of Alcohol, 37 J. Stud. Alcohol 1197, 1197 (1976)).

8. As to larger municipalities, what of the fate of municipal swimming pools, baseball and soccer complexes, and municipal golf courses that sell food?

9. Even under an application of the 19th Century Dillon's Rule, the City still possessed the legal authority to sell food as "necessarily implied or incident to the powers expressly granted and those which are indispensable to the declared objects and purposes of the [municipality]." *Ex parte McAlpine*, 47 S.D. at 475, 199 N.W. at 479. SDCL 35–4–2.1 deals with approval by a municipality for a license to engage in on-sale liquor sales on Sundays. To legally sell liquor by the drink on Sunday, the facility must have "the serving of food if the licensee has facilities for the serving of prepared meals from a fixed restaurant with the simultaneous seating capacity of at least ... twenty five patrons." *See also* SDCL 35–4–2.2 which requires the Sunday sale of wine be by a "restaurant." The statute goes on to define a "restaurant" as:

> a room regularly and in a bona fide manner used and kept open for the serving of meals to guests for compensation which has suitable table accommodations for at least fifty guests at one and the same time, and a connected kitchen containing conveniences for cooking sufficient to provide meals in a bona fide manner for fifty guests at one and the same time.

These statutes are a clear indication that the Legislature anticipated that the sale of food by a full service menu was clearly incidental to the sale of liquor by the drink on Sundays. In fact it was not only incidental, it was mandatory. If incidental on Sundays, no logic exists to say the same rationale does not apply the other six days of the week.

ation was an exercise of incidental powers that was not in conflict with any state statute or the state Constitution itself. As such, the food service operation was not an ultra vires act.[10] The trial court should be reversed.

10. Mrs. Olesen acknowledged the Hurley Bar should be permitted to serve "bar food," a term she defined to mean "munchies and chislic and things." Are significant issues such as sovereign immunity and legislative grants of authority to municipal corporations to be hinged on whether a frozen pizza constitutes a "munchie?"