SPANGLER, Appellant, v. CITY OF MITCHELL, Respondent.

(152 N. W. 339.)

(File No. 3611.   Opinion filed April 27, 1915.   Rehearing pending.)

1.  **Municipal Corporations—Incurring Indebtedness Without Vote— Issuance of Bonds Upon Vote—Constitutional Limitations— Statutes.**

   Const. Art. 13, Sec. 4, as originally adopted, provided that the debt of any county, state, etc., or other subdivision should never exceed 5 per cent of the value of the taxable property. Thereafter, by an amendment and as now provided, said section declares that such debt shall not exceed said 5 per cent., provided that any county may incur additional indebtedness not exceeding 10 per cent. of such valuation for the purpose of providing water works, etc., that cities having a population of 8,000 or more may incur indebtedness of 8 per cent. of such valuation for the purpose of constructing street railways or other lighting plants, and that no county, state, or other subdivision shall be included within such district without a majority vote in favor thereof, and no such debt shall ever be incurred for any of the purposes provided in said section, unless authorized by the favorable vote of a majority of the electors of such municipal corporations, etc.   **Held,** that the limitation concerning a vote extends only to indebtedness in excess of 5 per cent. created for the purpose named in the proviso; that a city may incur indebtedness within the 5 per cent. limitation, for any municipal purpose, when authorized by a law not in conflict with any other provision of the constitution, except that it may not issue bonds without a majority vote in favor thereof under Pol. Code, Sec. 1229, Subd. 5.

2.  **Municipal Corporations—Indebtedness—Municipal Telephone System, Power to Construct and Operate—Borrowing Money— Aiding Internal Improvements—Constitutional Provision, Test Under—Statute.**

   Laws 1907, Ch. 88, authorizing cities to acquire, construct, establish and operate a telephone system, **held,** not to be in violation of Const. Art. 13, Sec. 1, prohibiting cities, counties, municipalities, etc., from loaning their credit, making donations in aid of individual corporations, or becoming owner of individual stock of any corporation, and prohibiting the state from engaging in any work of internal improvement; since the con-

stitution merely prohibits cities, etc., from aiding or becoming interested in private enterprises, whether in the nature of public utilities or otherwise. **Held,** further, that said Sec. 1, Art. 13, forbids the state from engaging in, or aiding, through any municipality, any works of internal improvement, whether the same are public utilities or otherwise; that in determining whether such public utility service may be the subject of municipal ownership and control, the question is not whether such service is necessary as an exercise of municipal functions, but whether it is a public service.

3. **Constitutional Law—Statutes—Rule of Construction, Favoring Validity.**

Such a construction of a municipal act as will render it not in conflict with constitutional restrictions will, where possible, be adopted by the courts.

4. **Municipal Corporations—Indebtedness, Incurring Through Vote— Majority Vote, Meaning of—Statute.**

Pol. Code, Sec. 1229, Subd. 5, declaring that no bond shall be issued by City Council unless at an election the legal voters of the city by a majority vote shall have determined in favor of issuing bonds, authorizes issuance of such bonds upon a majority of the votes cast at the special election therefor, though such majority be not a majority of all the voters of the city.

Appeal from Circuit Court, Davison County. Hon. ROBERT B. TRIPP, Judge.

Action by T. J. Spangler against the City of Mitchell, to enjoin defendant from issuing bonds for and from contracting for construction of, and from the operation of, a telephone exchange. From a judgment for defendant, plaintiff appeals. Affirmed.

*Spangler & Haney, and Null & Royhl,* for Appellant.
*Laurits Miller,* for Respondent.

(1) Under point one of the opinion, Appellant cited. Section 2, Article 10, Constitution; Dodge v. Mission Twp., 46 C. C. A. 661; Loan Assn. v. Topeka, 20 Wall. 655.

Respondent cited: Sec. 1229, Subdiv. 5, Political Code; Sec. 4, Art. XIII., Constitution; Sec. 10, Art. XI., Constitution.

Respondent cited: Laws 1907, Ch. 88; Subdivision 5, Section 1229, Political Code; Sec. 2, Art. XIII., Constitution; Sec. 4, Art. XIII., Constitution; State ex rel Dean v. City of Madison, 7 Wis. 688; Sharpless v. Mayor of City of Philadelphia, 21 Pa. St. 150, 59 Am. Dec. 759; Schenley v. Allegheny, 25 Pa.

128; City of Minneapolis v. Janney, 90 N. W. 312 (Minn.);
Daggett v. Colgan, 14 L. R. A. 474 (Cal.); Stockton & Visalia
Ry. Co. v. City of Stockton, 41 Cal. 147; Sun Printing & Pub.
Assn. v. New York, 152 N. Y. 257, 37 L. R. A. 788; State ex
rel. Goodwin v. Nelson County, 1 N. D. 88, 45 N. W. 33, 8
L. R. A. 283; Norman v. Ky. Bd. of Managers of World's Co-
lumbian Exposition, 18 L. R. A. 556; Booth v. Woodbury, 32
Conn. 118; Chicago, M. & St. P. Ry. Co. v. Mason, 23 S. D.
564; Pierce v. Drew, 136 Mass. 75, 49 Am. Rep. 7; Kirby v.
Citizens' Telephone Co., 17 S. D. 362; People v. Salem, 20 Mich.
452; McQuillen Municipal Corporations, Sec. 1618; Rockingham
County Light & Power Company v. Hobbs, 72 N. H. 531, 66
L. R. A. 581; Prince v. Crocker, 32 L. R. A. 610 (Mass.)

(2) Under point two of the opinion, Appellant cited: Laws
1907, Ch. 88; Const., Art. 10, Sec. 2; Rippe v. Becker, (Minn.)
22 L. R. A. 857; Bay City v. State Treasurer, 23 Mich. 499;
State ex rel. v. Kelley, (Kan.) 70 L. R. A. 450; Sec. 22 Cyc.
1589; State ex rel. v. Froelick, (Wis.) 58 L. R. A. 757; Rippe
v. Becker, (Minn.) 22 L. R. A. 857; State ex rel. v. Kelley, (Kan.)
70 L. R. A. 450; Gibson v. Land Com., 79 N. W. 912; Oren v.
Pingree, 120 Mich. 550, 46 L. R. A. 407; Ryerson v. Utley, 16
Mich. 270; Telephone Co. v. Mitchell, 22 S. D. 191; N. W.
Tel. Co. v. C., M. & St. P. Ry., (Minn.) 79 N. W. 315; People
v. Chicago, 51 Ill. 17.; People v. Salem, 20 Mich. 452; City of
Crawfordsville v. Bradon, 14 L. R. A. 268; Overall v. Madison-
ville, 12 L. R. A. (N. S.) 433; Ellinwood v. Reedsbury, 91 Wis.
131, 64 N. W. 885; Lake County Water Co. v. Walsh, 65 N.
E. 530; Huron Waterworks Co. v. City of Huron, 7 S. D. 9.

Respondent cited:    22 Cyc. 1589; Rippe v. Becker, 56
Minn. 100, 57 N. W. 301, 22 L. R. A. 857; Leavenworth County
Commissioners v. Miller, 7 Kan. 479, 12 Am. Rep. 425; Clark
v. City of Janesville, 10 Wis. 119; Bushnell v. Beloit, 10 Wis.
155; Rogan v. City of Watertown, 30 Wis. 259; Bloomer v.
Bloomer, 128 Wis. 297, 107; City of Aurora v. West, 9 Ind. 77;
Police Jury v. McDonoghs Succesn., 8 La. Ann. 341; New
Orleans v. Graible, 9 La. Ann. 561; Commissioners of Leaven-
worth County v. Miller, 7 Kan. 479, 12 Am. Rep. 425; Pine
Grove Township v. Talcott, 19 Wall 666; Taylor v. City of

Ypsilanti, 105 U. S. 60; Pine Grove Township v. Talcott, 19 Wall. 666; Taylor v. City of Ypsilanti, 105 U. S. 60; City of Aurora v. West, 9 Ind. 77; Commissioners of Leavenworth County v. Miller, 7 Kan. 479, 12 Am. Rep. 425; Laws 1907, Ch. 82.

(4) Under point four of the opinion, Appellant cited: Williamson v. Aldrich, 21 S. D. 13; Ex rel. Stakke, 22 S. D. 228.

Respondent cited: Treat v. DeJean, 22 S. D. 505, 118 N. W. 709; County of Cass v. Johnson, 95 U. S. 360, 24 L. Ed. 416; 10 Am. & Eng. Ency. of Law. 754, and cases there cited; 15 Cyc. 388, and cases there cited; Town of Sonthington v. Sonthington Water Company, 80 Conn. 646; 13 Am. & Eng. Ency. Ann. Cases 411, and notes; Battle Creek Brewing Co. v. Board of Supervisors of Colborn Co., 166 Mich. 62, 131 N. W. 160; 25 Am. & Eng. Ann. Cases, 946, and notes; Taylor v. McFadden, 84 Iowa, 262, 50 N. W. 1070; Smith et al. v. Proctor et al., 130 N. Y. 319, 29 N. E. 312, 14 L. R. A. 408; State ex rel. McCue v. Blaisdell, 119 N. W. 360 (N. D.).

SMITH, J.   Action by plaintiff, who is appellant, to enjoin the city of Mitchell, its officers, agents, servants, and attorneys, from issuing proposed bonds for and from contracting for the construction of, and from operating or attempting to operate, a telephone exchange in the city of Mitchell. Trial to the court. Findings of fact and conclusions of law upon which judgment was entered for defendants.

Briefly stated, the findings of fact disclose that on June 10, 1913, a special election was held in the city of Mitchell to determine whether the city should issue bonds in the sum of $60,-000 for constructing, equipping, and operating a municipal telephone system in the city of Mitchell. No other question was voted upon. At said election 776 votes were cast in favor of and 260 votes against the bonds. Thereafter the city caused notices to be published calling for bids for the $60,000 of bonds, and also bids for the construction and installation of the proposed telephone system.

It is alleged in the complaint and admitted by the answer that the city, unless restrained, will enter into a contract for the sale of bonds and for the construction and installation of a telephone system. Oral evidence was offered to show that at the

preceding city election in April 1,646 votes were polled, and that thereafter, until the bond election in June, there had been no substantial change in the number of voters in the city. It is alleged in the complaint, and was proved at the trial, that no ordinance had been passed by the city council providing for the collection of an annual tax sufficient to pay the annual interest, and the principal of the bonds when due. The trial court found as matter of law: First, that the city could issue the bonds upon adopting the proper ordinance; second, that the city has power, under the law and Constitution, to construct, equip, maintain, and operate a municipal telephone system; third, that the city has power to issue bonds and use the proceeds thereof to construct and operate a municipal telephone system.

It is admitted that the proposed telephone system is to supply the residents of Mitchell and the public with telephone service. This appeal is from a judgment dismissing the injunction action and from an order denying a new trial.

In appellant's brief it is said:

"The record presents the following questions:

"Is the finding that at the special election the bonds were carried by a majority of the electors of said city contrary to the evidence?

"Has the city power, under the Constitution, to engage in the business of operating a telephone exchange for the purpose of supplying the citizens and the public with telephone service?

"Has the city power, under the Constitution, to issue bonds of the city, the proceeds to be used in constructing and equipping a telephone exchange for the purpose of supplying the citizens and the public with telephone service?

"Did the court err in vacating the temporary injunction and dismissing the suit when no irrepealable ordinance required by the Constitution had been adopted?"

[1] We will first consider whether in this case the authority of the municipality to incur the proposed indebtedness is limited by, or conditioned upon, the provision of section 4, art. 13, of the state Constitution, which requires the question of proposed indebtedness to be submitted to a vote of the electors. As originally adopted in 1889, section 4 was as follows:

"The debt of any county, city, town, school district, * * *

or other subdivision, shall never exceed five per centum upon the assessed value of the taxable property therein. In estimating the amount of indebtedness which a municipality or subdivision may incur the amount of indebtedness contracted prior to the adoption of this Constitution shall be included."

In 1896 this section was amended by adding two provisos; the first of which authorized municipalities to incur an additional indebtedness, not to exceed 10 per centum upon the assessed valuation of the assessable property therein, for the purpose of providing water for irrigation, domestic uses, etc. The second proviso in the section as first amended, among other things, declares that:

"No such debt shall ever be incurred for any of the purposes in this section provided, unless authorized by a vote in favor thereof of a majority of the electors of such county, municipal corporatin," etc.

In 1902 this section was again amended, substantially reenacting the then existing provisions of section 4, but adding thereto what is now the second proviso, to the effect that cities containing a population of 8,000 or more may incur an indebtedness not exceeding 8 per cent. upon the assessed valuation of the taxable property therein, for the year next preceding that in which said indebtedness is incurred, for the purpose of constructing street railways, electric lights, or other lighting plants. The entire section as thus amended, reads as follows:

"Sec. 4. The debt of any county, city, town, school district, civil township or other subdivision, shall never exceed five (5) per centum upon the assessed valuation of the taxable property therein for the year preceding that in which said indebtedness is incurred.

"In estimating the amount of indebtedness which a municipality or subdivision may incur, the amount of indebtedness contracted prior to the adoption of the Constitution shall be included:

"Provided, that any county, municipal corpration, civil township, district or other subdivision may incur an additional indebtedness not exceeding ten per centum upon the assessed valuation of the taxable property therein for the year precding that in which said indebtedness is incurred, for the purpose of providing

water and sewerage, for irrigation, domestic uses, sewerage and other purposes; ,and

"Provided, further, that in a city where the population is 8,000 or more, such city may incur an indebtedness not exceeding eight per centum upon the assessed valuation of the taxable property therein for the year next preceding that in which said ir debtedness is incurred for the purpose of constructing street railways, electric lights or other lighting plants.

"Provided, further, that no county, municipal corporation, civil township, district or subdivision shall be included within such district or subdivision without a majority vote in favor thereof of the electors of the county, municipal corporation, civil township, district or other subdivision as the case may be, which is proposed to be included therein, and no such debt shall ever be incurred for any of the purposes in this section provided, unless authorized by a vote in favor thereof by a majority of the electors of such county, municipal corporation, civil township, district or subdivision incurring the same."

It will be seen that this section, as originally adopted, constituted an absolute limitation on the powers of municipalities to incur an indebtedness for any purpose whatever in excess of 5 per centum upon the assessed valuation of the taxable property therein for the year preceding that in which said indebtedness might be incurred, but contained no requirement that any proposed indebtedness should be submitted to a vote of the electors. The first of the two amendments, by way of provisos, authorized an additional indebtedness not exceeding 10 per centum for the purposes therein named; while the second amendment authorized an additional indebtedness not exceeding 8 per centum to be incurred by cities having a population of 8,000 or more, for the specific purposes named in that proviso. The third proviso is, in effect, nothing more than a limitation upon the exercise of the powers conferred by the two added provisos. It declares that:

"No such debt shall ever be incurred for any of the purposes in this section provided, unless authorized by a vote in favor thereof by a majority of the electors of such county, municipal corporation," etc., incurring the same.

This limitation must be construed as extending only to indebtedness created for the purposes named in the preceding pro-

visos. It is true that section 4, taken as a whole, is a limitation upon power of municipalities to create indebtedness for any municipal purpose whatever. But to construe the third proviso otherwise than as indicted would be to hold that no indebtedness tor any purpose whatever could be incurred or created by a city, unless first submitted to a vote of the electors. The absurd results of such a construction are too obvious to require discussion. We therefore hold that it is only when the proposed indebtedness is to be incurred for water, sewerage, etc., or for construction of street railways, electric lights, etc., in excess of the 5 per cent. limitation, that the provisions of section 4 of article 13 of the Constitution apply. It is clear, therefore, that the city without a vote may incur indebtedness within the 5 per cent. limitation for any municipal purpose when authorized by law which is not in conflict with any other provision of the Constitution, except that it may not issue bonds without such vote. Section 1229, subd. 5, Pol. Code.

[2, 3] The next question to be considered is whether, under the laws of this state, the defendant city is authorized to construct, equip, maintain, and operate a municipal telephone system, and to borrow money and isue bonds for that purpose. Chapter 88, Laws of 1907, provides that:

"The city council of any city in this state shall have power to acquire, construct, equip, maintain and operate a telephone system for the purpose of providing its inhabitants with telephone service, and to make such rules and regulations concerning the same as it may deem advisable."

This enactment, in effect, declares that the acquisition, construction, and operation of a telephone system is a legitimate exercise of the powers of a municipal corporation, by reason of which municipal indebtedness may be incurred. The question whether that enactment is in conflict with other provisions of the Constitution will be considered later. However, the constitutional limitation of 5 per cent. yet remains operative to limit the general debt creating power of the city. Does the proposed indebtedness transcend that limitation? The trial court found that the assessed valuation of taxable property in the city of Mitchell for the year 1914 was $7,946,435. Upon this valuation the total indebtedness, existing and proposed, of the city of Mitchell,

could not exceed $397,321. But the trial court also further found that the total existing indebtedness of the city was only $200,500. . It is clear, therefore, that the proposed indebtedness of $60,000, in addition to existing indebtedness, does not exceed the 5 per cent. constitutional limitation. Section 4, art. 13, therefore requires no further consideration.

Appellant most strenuously contends that chapter 88, Laws of 1907, authorizing cities to acquire, construct, maintain, and operate a telephone system is in contravention of the following clause of section 1, art. 13, of the Constitution:

"Nor shall the state engage in any work of internal improvement."

It is appellant's contention that the construction and operation of a telphone system is not a legitimate or necessary exercise of the powers of a municipal government as such, but is a work of internal improvement, and that, because the state, as a political community, is forbidden to engage in works of internal improvement, it can neither authorize nor require its inferior municipalities so to do. In the discussion of this question appellant's counsel have presented an able and learned review of the origin, history, and construction of this constitutional clause, as found in the Constitutions of other states, prior to its adoption in our own Constitution, together with a citation and review of decisions of courts, particularly Michigan, Wisconsin, Minnesota, and Iowa. An attempt at this time to review many other decisions cited in the briefs of counsel and considered as having an indirect bearing upon this question would serve no useful purpose in the view we take of this case. See 22 Cyc. 1589.

It is appellant's contention that telephone companies are common carriers subject to the supervisory jurisdiction of the State Board of Railroad Commissioners, and are given the right of eminent domain; that telephone lines are instruments of commerce when engaged in interstate commerce, and are subject to the jurisdiction and control of the Interstate Commerce Commission; and that the construction and operation of telephone lines and exchanges is a work of "internal improvement." N. W. Tel. Co. v. C., M. & St. P. Ry.; 76 Minn. 334, 79 N. W. 315; Kirby v. Citizens' Tel. Co,, 17 S. D. 362, 97 N. W. 3, 2 Ann. Cas. 152; Tel. Co. v. Mitchell, 22 S. D. 191, 116 N. W.

67.    But if it be conceded that the construction and operation of a telephone system is a work of internal improvement in which the state is forbidden, either directly or indirectly, to engage, does it necessarily follow that the Legislature may not authorize a city to construct, maintain, and operate a telephone system within its own borders for the use and convenience of its own citizens?    It is appellant's contention that the state may not authorize a municipality to do those things which the Constitution prohibits the state itself from doing.    To sustain this contention, appellant cites People v. Salem, 20 Mich. 452, 4 Am. Rep. 400; Bay City v. State Treas., 23 Mich. 499; Oren v. Pingree, 120 Mich. 550, 79 N. W. 814, 46 L. R. A. 407; State v. Wapello County, 13 Iowa, 388.

The opinion of Justice Cooley in the Salem case, supra, is cited by appellant as a leading case first enunciating the doctrine relied upon.    That action was mandamus to compel the township board of Salem to execute and issue bonds authorized by the Legislature and voted to aid in the construction of a proposed railway, by a private railway corporation, and to raise money by taxation therefor.    Justice Cooley says:

"I suppose, if the legislative act in question can be sustained at all, it must be so sustained under the general authority of the state to prescribe and determine the objects to be provided for, fostered or aided through the expenditures of the public moneys; in other words, it must be regarded as an incipient step in the exercise of the sovereign power of taxation."

A careful reading will reveal that the entire doctrine of that case is crystallized in a single sentence at the beginning of Justice Cooley's discussion of the subject.    He says:

"It is conceded, nevertheless, that there are certain limitations upon this power,. not prescribed in express terms by any constitutional provision, but inherent in the subject itself, which attend its exercise under all circumstances, and which are as inflexible and absolute in their restraints as if directly imposed in the most positive form of words."

His discussion of the taxing power as thus defined and limited is clear and illuminating, and at the conclusion he says:

"The case before us is that of a private corporation demanding a gratuity which has been voted to it in township meeting

upon the assumption that its business operations and facilities will incidentally benefit the township. * * * If the authority exercised is not within the taxing power of the state, it is quite needless to discuss whether, if it were within it, there are not restrictions which prohibit its exercise."

The entire decision is predicated upon the statement that the power of taxation is inherently limited in its nature, apart from any constitutional limitation, and that such limitation forbids the taxing power to be used in aid of private enterprises, whether such private enterprise is one intended to perform a public service or is one strictly private in its purposes and control. Justice Cooley says:

"It scarcely seems necessary to say that what the state as a political community cannot do it cannot require the inferior municipalities to do. When the case is found to stand * * * outside the domain of taxation, state burdens and township burdens are alike precluded."

Under this decision, if the Constitution of Michigan at that time, as it formerly did, had expressly authorized the state to engage in works of internal improvement, the taxing power of the state could not have been exercised to aid private persons or corporations engaged in them as private enterprises. The decision was not founded on, or a construction of, the clause of the Michigan Constitution which forbade the state to engage in works of internal improvement, but upon a limitation said to be inherent in the taxing power itself, and wholly outside constitutional restrictions. Thus understood, the quotation from Justice Cooley's opinion relied upon by appellant's counsel can have no application to the case at bar, as an interpretation of the clause of the Constitution inhibiting the state from engaging in works of internal improvement. The same court in Oren v. Pingree, supra, purports to apply Justice Cooley's views in the Salem case to a state of facts somewhat dissimilar, and which arose under a statute of that state attempting to authorize the city of Detroit to purchase, maintain, and operate certain railway lines. The act authorized a commission to be appointed by the city council, to purchase—

"in their discretion and upon such terms and conditions as they may deem advisable for the interest of said city * * * from

the company or companies owning the same  *  *  *  any street railway or railways existing at the time of the passage of this act and lying wholly within or partly within and partly without said city, operated by the same company or companies, together with the property, assets, rights, privileges, etc., 'owned and used in connection with or pertaining to said railways, including rights to routes belonging to such company or companies upon which a railway shall not be in operation, and may operate and·maintain said street railway so acquired for the carriage of passengers and freight for hire.'  *  *  *  After acquiring any railway or railways  *  *  *  said commission shall have the power to enter into agreements with any street railway company having a line of street railway, for or in relation to the exchange of tickets and transfers, and for the carriage of passengers, use of tracks, or operation of cars, provided that such agreement shall not be inconsistent with or in violation of the terms of the conveyance or contract mentioned in section 5."

The street railways were to be purchased and operated subject to all contracts with connecting lines inside or outside the city. The commission were expressly authorized to handle the system in the same manner the existing board of directors of the private corporation might have done. The nub of the whole decision appears to be found in the statement of Moore, J., who delivered the opinion of the court, that:

"If the Legislature may authorize the city of Detroit to enter into the proposed arrangement it may authorize any other municipality to do so, and, by concert of action between the various municipalities, they may cover the state with means of rapid transit owned by and operated by the municipalities. This would enable the state to do, by means of agencies called into being by itself, what it cannot itself do."

No such conditions can arise upon a proper construction of the provisions of chapter 88, Laws of 1907, as authorizing any city in the state to acquire, construct, maintain, and operate within the city a telephone system for the purpose of providing its inhabitants with telephone service. And such a construction of a legislative act as will render it not in conflict with constitutional restrictions will always be adopted by the courts where possible.

Section 1, art. 13, of the Constitution is as follows:

"Neither the state nor any county, township or municipality shall loan or give its credit or make donations to or in aid of any individual, association or corporation except for the necessary support of the poor, nor subscribe to or become the owner of the capital stock of any association or corporation, nor pay or become responsible for the debt or liability of any individual, association or corporation: Provided, that the state may assume or pay such debt or liability when incurred in time of war for the defense of the state. Nor shall the state engage in any work of internal improvement."

Even a casual examination of this section makes it plain that it is merely an embodiment of the principles announced in the decisions hereinbefore referred to, and that it forbids the state or any of its minor governmental agencies, in any manner, directly or indirectly, to aid or become interested in private enterprises, whether in the nature of public utilties or otherwise. But it does not forbid municipalities from themselves owning, constructing, or operating any public service utility which legislative wisdom may deem necessary or proper, under existing local conditions, for the convenience of the municipal inhabitants, when the service is such as to bring it fairly within the principles governing a legitimate exercise of the taxing power. But it does directly forbid the state from engaging in or aiding, either directly or indirectly, through authority given municipalities, any works of internal improvement, whether the same belong to the class known as public utilities or otherwise. Cooke v. Iverson, 108 Minn. 388, 122 N. W. 251, 52 L. R. A. (N. S.) 215; State v. Kelly, 71 Kan. 811, 81 Pac. 450, 70 L. R. A. 450, 6 Ann Cas. 298; Rippe v. Becker, 56 Minn. 100, 57 N. W. 331, 22 L. R. A. 857.

Chapter 88, Laws of 1907, does not attempt to authorize the city, by donation, loan, stock subscription, or otherwise, to aid a proposed private telephone enterprise. It does purport to authorize municipal taxation for the construction and maintenance of a public utility. 4 McQuillan, Mun. Corp. § 1618.

The real question upon this phase of the case is whether such public utility service must be supplied by private enterprise, or whether it may be the subject of municipal ownership and con-

trol.   The test, we think, is, not whether such service is neces-
sary as an exercise of the functions of municipal government,
but whether it is a public service.   As said by Judge Barrett, in
Sun Printing & Pub. Ass'n v. N. Y., 8 App. Div. 230, 40 N. Y.
Supp, 607, affirmed in 152 N. Y. 257, 46 N. E. 499, 57 L. R. A.
788:

"They are not limited to policing the city, to paving its
streets, to providing it with light, water, sewers, docks, and mar-
kets.   They may also be required by the sovereign power to fur-
nish their citizens with schools, hospitals, dispensaries, parks,
libraries, and museums, with zoological, botanical, and other
gardens.   They may even gratify our ears with music of a sum-
mer afternoon, or minister to our comfort by providing us with
public baths.   Expenditures in all these directions have never
been questioned.   Where, then, shall we draw the line?   It
would be very simple to draw it at those purposes for which pre-
cedent in the past can be found, and to exclude all others.   This
test should be easy of application, but would be essentially vicious
and erroneous.   Growth and extension are as necessary in the
domain of municipal action as in the domain of law.  · New
conditions constantly arise which confront the Legislature with
new problems.   As the structure of society grows more complex,
needs spring up which have never existed before.   These needs
may be so general in their nature as to affect the whole country
or the whole state, or they may be local, and confined to a single
county or municipality.   *   *   *   To hold that the Legislature
of . this state, acting as the parens patriæ, may employ for the re-
ilef or welfare of the inhabitants of the cities of the state only
those methods and agencies which have proved adequate in the
past, would be a narrow and dangerous interpretation to put
upon the fundamental law."

[4] But appellant further insists that the evidence in the
record does not sustain the finding of the trial court that at the
special election required by the statute the issuance of bonds was
authorized by a majority of the legal voters of the city.   Sub-
division 5; § 1228, Pol. Code, declares that: .

"No bonds shall be issued by the said city council   *   *   *
either for general or special purposes unless at an election   *   *   *

the legal voters of said city by a majority shall be determined in favor of issuing said bonds."

Appellant relies on this provision of the statute.

An examination of the many decisions of state courts construing restrictive statutory and constitutional provisions requiring authorization of bonds issued and other matters, at general or special elections, discloses that in most instances the language of the particular statute or constitutional provision is controlling. These provisions group themselves into two classes: First, those which by express words or by necessary implication require only a majority of the votes cast at the election; and, second, those which require the votes of a majority of the electors within the city, or a majority of the electors or of the voters qualified to vote at the election. Statutes and constitutional provisions of both classes exist in this state.

Adkins v. Lien, 10 S. D. 436, 73 N. W. 909, construed section 2, art. 9, of the Constitution, relating to elections for county seats, which requires "a majority of all the votes cast at said election." In that case Justice Fuller said:

"The phrase 'a majority of all votes cast at said election' is so transpicuous that no rule of construction has any application thereto."

Although perhaps not controlling in that case, the statute referred to in Treat v. De Jean, 22 S. D. 505, 118 N. W. 709, belongs to the first class, inasmuch as it requires only a majority of the electors "voting at such election."

In the second class is found Williamson v. Aldrich, 21 S. D. 13, 108 N. W. 1063, which construed section 4, art. 13, of the Constitution, enlarging and also restricting municipal indebtedness for certain purposes, unless authorized by a vote in favor thereof, by "a majority of the electors of such county, municipal corporation," etc., incurring the same. This provision was held to require a majority of all the electors within the city. In the same class is Lavery v. Logan School District, 28 S. D. 166, 132 N. W. 683. That decision construed a statute governing the removal of schoolhouses which required a vote of a "majority of the electors of the entire district." In State ex rel. v. Stakke, 22 S. D. 228, 117 N. W. 129, a similar construction was given a statute which required that "a majority of the voters;

of such township, town or city, shall vote in favor of such sale." Many decisions may be found construing the two classes of statutes and constitutional provisions. Southington v. Southington Water Co., 80 Conn. 646, 69 Atl. 1023, 13 Ann. Cas. 411, note; Battle Creek Brewing Co. v. Board of Supervisors, 166 Mich. 52, 131 N. W. 160, Ann. Cas. 1912D, 946; State ex rel. v. Brooks, 17 Wyo. 344, 99 Pac. 874, 22 L. R. A. (N. S,) 478.

The language of the statute under discussion in this case (section 1229, subd. 5, Pol. Code) is as follows:

"Provided no bonds shall be issued by the said city council under the provisions of this section either for general or special purposes unless at an election  *  *  *  the legal voters of said city by a majority shall be determined in favor of issuing said bonds."

To which class does this statute belong? A careful and somewhat extended examination of decisions construing similar statutes leads us to the conclusion that it belongs to the first class, and that it requires only a majority of the votes cast at the special election.

In Attorney General v. Adrian, 164 Mich. 143, 129 N. W. 44, under a statute which required a proposed amendment of the municipal charter to "be submitted to the electors for adoption or rejection  *  *  *  [and] in case the electors shall, by a majority vote, declare in favor of such revision a charter commission shall be selected," it was held that a majority of the votes cast for and against revision was sufficient.

In Joe v. State, 136 Ga. 158, 70 S. E. 1104, under a statute providing that a court in a certain county should not be abolished until the statute should be approved "by a majority of all the qualified voters of the county to whom the questions should be submitted," a majority of the votes cast at the election was held sufficient.

In Taylor v. McFadden, 84 Iowa, 262, 50 N. W. 1070, the court said:

"It is contended that the proposition to authorize waterworks did not receive the required number of votes. It did receive a majority of the votes cast, but not a majority of all the votes which, it is alleged were of the town. The approval must be by a 'majority of the voters of the city or town'; but how is that to

be determined? There was no provision for ascertaining the number of person in the town who were qualified to vote at that election, except as they appeared and voted. It is only by the vote cast that the result of such elections can be determined. That those not voting are to be counted is at variance with our system of elections. Ample notice is provided to electors, and the result must necessarily be determined by the vote cast. The voters of the city or town contemplated in the statute are those who, after the required notice, come to the polls and deposit their ballots."

In Bryan v. Lincoln, 50 Neb. 620, 70 N. W. 252, 35 L. R. A. 752, under a statute which provided that the issuance of municipal bonds must be "authorized by a vote of the people," the court said:

"It must be presumed that framers of the section of the statute, by virtue of which this matter of the bond issue was submitted, had it in contemplation that all the electors would vote (as indeed, if possible, they all should), and that a majority of those voting should settle the question."

The meaning and interpretation of the statute under discussion in this case, and the application of the foregoing authorities, is made clearer by transposition of one of its clauses so that it reads:

"Unless the legal voters of said city by a majority at an election, shall be determined in favor of issuing said bonds."

We think a correct statement of the general principle which should control in the interpretation of this class of statutes is found in the syllabus to the case of State v. Blaisdell, 18 N. D. 31, 119 N. W. 360, where it is said:

"A majority of the votes cast upon a question submitted to a vote, if in the affirmative, carries it, unless the legislative will to the contrary is clearly expressed in the Constitution or the law."

The trial court held that the vote cast at the election authorized the issuance of bonds; that the city of Mitchell had power and authority to issue and sell the proposed bonds, and to construct, equip, maintain, and operate a municipal telephone system in said city, upon the adoption of an ordinance providing for the issuance and sale of said bonds, and for the levy and collection of an annual tax sufficient to pay the interest, and

also the principal of said bonds when the same become due.     In so holding the trial·court did not err.

The judgment and order of the trial court must be affirmed.