Mark V. MEIERHENRY, Attorney General for the State of South Dakota, Richard R. Robinson, a resident and taxpayer of the City of Rapid City, South Dakota, and, Earl D. Nordby, a resident and taxpayer of the City of Huron, South Dakota, Plaintiffs,

v.

CITY OF HURON, a political subdivision of the State of South Dakota, and City of Rapid City, a political subdivision of the State of South Dakota, Defendants.

No. 14323.

Supreme Court of South Dakota.

Original Proceeding Submitted on Briefs Feb. 13, 1984.

Decided June 20, 1984.

Douglas E. Kludt, Mark A. Moreno, Asst. Attys. Gen., Pierre, for plaintiffs; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Glenn A. Severson, Huron, for defendant City of Huron.

Ray E. Woodsend, Rapid City, for defendant City of Rapid City.

WOLLMAN, Justice.

This is an original proceeding in which the Attorney General, joined by a resident and taxpayer of the city of Huron, and a resident and taxpayer of the city of Rapid City, seeks a declaratory judgment declaring SDCL ch. 11–9 (hereinafter referred to as "the Act") unconstitutional and a writ of prohibition restraining the cities of Huron and Rapid City from proceeding with the establishment of tax incremental districts and the issuance of bonds pursuant to the Act. We deny the relief requested.[1]

In 1978, the South Dakota Legislature authorized municipalities to create tax incremental districts, prepare and implement project plans, issue tax incremental bonds and notes, deposit money in a special fund, and enter into contracts and agreements to implement the provisions and effectuate the purposes of the project plans. 1978 S.D.Sess.Laws ch. 91, § 6. This legislation was codified in the Act and was amended in 1983. 1983 S.D.Sess.Laws ch. 37.

■ The basic purpose of statutes authorizing the creation of tax incremental districts is to enable the increased tax revenues generated by community redevelopment projects to be placed in a special fund for the purpose of repaying the public costs of the projects.

After the planning commission or committee of a municipality provides notice and a hearing regarding the creation of a tax incremental district, it submits to the governing body a recommendation regarding the creation of such district. SDCL 11–9–3, 11–9–4. The aggregate assessed value of the taxable property in the district plus all other existing districts must not exceed a specified percentage of the taxable property of a municipality. SDCL 11–9–7. It must be found that at least twenty-five percent of the area of the real property qualifies as a blighted area and that the improvement of the area is likely to significantly enhance the value of substantially all the other realty in the district. SDCL 11–9–8.[2] When these and other statutory requirements have been met, the governing body of a municipality may pass a resolution creating a tax incremental district. SDCL 11–9–5.

1. We previously declined to issue an advisory opinion concerning the constitutionality of this legislation. *See To His Excellency Wollman,* 268 N.W.2d 820 (S.D.1978). The present action is brought pursuant to 1978 S.D.Sess.Laws ch. 91, § 31, which directs the Attorney General to commence a declaratory judgment action by petitioning for leave to commence an original action in this court.

2. SDCL 11–9–9, 11–9–10, and 11–9–11 set forth categories which would constitute blighted areas.

Once a tax incremental district is created, the State Department of Revenue (Department) must determine its tax incremental base. SDCL 11–9–20. The tax incremental base is the aggregate assessed value of all taxable property located within a tax incremental district on the date of its creation. SDCL 11–9–19. Department thereafter gives annual notice of both the assessed value of property within a district and the assessed value of the tax increment base, as well as an explanation that the tax increment will be paid to the municipality. SDCL 11–9–24.

The tax increment is computed in accordance with the following formula set forth in SDCL 11–9–26:

$$\text{Total taxes levied on all taxable property within the tax incremental district} \times \frac{\text{Current Assessed Value} - \text{Tax Incremental Base}}{\text{Current Assessed Value}}$$

The positive tax increments are paid to the municipality and deposited in a special fund, SDCL 11–9–31, until all project costs are paid or until fifteen years after making the last expenditure in the project plan. SDCL 11–9–25.

Once determined, the tax incremental base constitutes a cap on the assessed valuation of property within the tax incremental district for school and local governmental purposes by virtue of SDCL 11–9–27, which provides:

> With respect to the county, school districts, and any other local governmental body having the power to levy taxes on property located within a tax increment district, the calculation of the assessed valuation of taxable property in a tax incremental district may not exceed the tax incremental base of the district until the district is terminated.

Payment by the municipality of project costs may be made from the special fund of the tax incremental district, the municipality's general fund, proceeds of sale of municipal improvement bonds under SDCL ch. 9–44, proceeds of the sale of revenue bonds issued under SDCL ch. 9–54, proceeds of the sale of tax incremental bonds or notes issued pursuant to the Act, or any combination of the above. SDCL 11–9–30.

The city of Huron created a tax incremental district by resolution dated March 7, 1983. Both the city of Huron and the city of Rapid City have indicated an intention to issue bonds pursuant to the Act.

■ In addressing the many constitutional claims raised by plaintiffs, we begin with the premise that legislative action is accorded a presumption in favor of validity and propriety and should not be held unconstitutional by the judiciary unless its infringement of constitutional restrictions is so plain and palpable as to admit of no reasonable doubt. *See, e.g., Independent Community Bankers Ass'n of South Dakota, Inc. v. State*, 346 N.W.2d 737 (S.D. 1984); *Clem v. City of Yankton*, 83 S.D. 386, 160 N.W.2d 125 (1968).

### I.

Plaintiffs contend that by authorizing the expenditure of public funds for a private purpose, the effect of which may be to confer a substantial benefit to the private developer, the Act violates Art. XI, § 2, of the South Dakota Constitution, which provides in part that "[t]axes shall ... be levied and collected for public purposes only."

■ The legislature is given a large discretion in determining whether a statutory purpose is public or private, a discretion that the courts should not interfere with unless the action taken by the legislature is clearly evasive. *Clem v. City of Yankton, supra; Dean v. Coddington*, 81 S.D. 140, 131 N.W.2d 700 (1964). That legislation may amount to public subsidy does not destroy the public purpose of the legislation. *Clem v. City of Yankton, supra.*

■ As a general principle, the acquisition of land in blighted areas and the sale or leasing of this land for private redevelopment is deemed a legitimate public purpose. *Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954); *see generally* Annot., 44 A.L.R.2d 1414 (1955). Several

courts in other jurisdictions have concluded that the expenditure of tax increments or the proceeds of tax incremental bonds for community redevelopment projects are not violative of the public purpose doctrines in their state constitutions. *See, e.g., Denver Urban Renewal Auth. v. Byrne,* 618 P.2d 1374 (Colo.1980); *State v. Miami Beach Redev. Agency,* 392 So.2d 875 (Fla.1980); *People ex rel. City of Canton v. Crouch,* 79 Ill.2d 356, 38 Ill.Dec. 154, 403 N.E.2d 242 (1980); *Richards v. City of Muscatine,* 237 N.W.2d 48 (Iowa 1975); *Tribe v. Salt Lake City Corp.,* 540 P.2d 499 (Utah 1975); *Sigma Tau Gamma Frat. House Corp. v. City of Menomonie,* 93 Wis.2d 392, 288 N.W.2d 85 (1980).

■ We agree with those decisions and likewise conclude that the Act does not violate the public purpose doctrine contained in Art. XI, § 2 of our state constitution.

### II.

Plaintiffs contend that by providing for a non-uniform tax, the Act violates Art. VI, §§ 17 and 18, and Art. XI, §§ 2 and 10 of the South Dakota Constitution and the state and federal constitutional guarantees of due process and equal protection. We disagree.

South Dakota Constitution Art. VI, §§ 17 and 18 provide as follows:

Section 17:

No tax or duty shall be imposed without the consent of the people or their representatives in the Legislature, and all taxation shall be equal and uniform.

Section 18:

No law shall be passed granting to any citizen, class of citizens or corporation, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations.

South Dakota Constitution Art. XI, § 2 provides in part that "[t]axes shall be uniform on all property of the same class .…" South Dakota Constitution Art. XI, § 10 provides in part that "[f]or all corporate purposes, all municipal corporations

may be vested with authority to assess and collect taxes; but such tax shall be uniform in respect to persons and property within the jurisdiction of the body levying the same."

Plaintiffs concede that taxable property located within tax incremental districts is assessed in the same manner and at the same rates as taxable property outside such districts.

Plaintiffs contend that taxpayers within a taxing jurisdiction levying property taxes within a tax incremental district pay higher property taxes than they otherwise would were the assessed valuation of taxable property within the district not frozen at the tax incremental base for the purposes of taxation for general municipal purposes. As a result, those property owners are required to carry more than their fair share of the general costs of government, which has the effect of constituting a non-uniform scheme of taxation in violation of the above-quoted constitutional provisions.

■ Although it is true that under the Act the additional tax revenues derived from the increase in the assessed valuation of the property within the tax incremental district is earmarked for the repayment of the project costs, SDCL 11–9–31, and thus is not available to defray the costs of school and local governmental operations, this fact does not necessarily render the Act unconstitutional. Constitutional requirements of equality and uniformity relate to the levy of taxes, and neither the requirement of uniformity nor of equal protection of the law limit the legislature's authority to allocate or distribute public funds. *Douglas Indep. School Dist. No. 3 v. Bell,* 272 N.W.2d 825 (S.D.1978); *Dean v. Coddington, supra.* The findings that the governing body of the municipality must make as a prerequisite to establishing a tax incremental district, SDCL 11–9–8, presuppose that in the absence of the creation of the district the assessed valuation of the property within the area of the proposed district will not increase and, indeed, will likely decline. See the definitions of

blighted areas set forth in SDCL 11–9–9, 11–9–10, and 11–9–11.

Plaintiffs have cited no case authority in support of their contention that the Act violates South Dakota Constitution Art. VI, §§ 17 and 18, Art. XI, §§ 2 and 10, or the due process and equal protection guarantees of the state and federal constitutions. Other courts which have addressed this issue have found that the tax incremental financing statutes in their respective jurisdictions do not violate constitutional prohibitions against non-uniform taxation either under their respective state constitutions or under the United States Constitution. *See, e.g., Richards v. City of Muscatine, supra; Denver Urban Renewal Auth. v. Byrne, supra; People ex rel. City of Canton v. Crouch, supra; State ex rel. Schneider v. City of Topeka,* 227 Kan. 115, 605 P.2d 556 (1980); *South Bend Pub. Transp. Corp. v. City of South Bend,* 428 N.E.2d 217 (Ind.1981). Likewise, we reject plaintiffs' efforts to challenge the Act on similar grounds.

### III.

The next issue raised is whether the tax increment bonds issued pursuant to the Act constitute a debt within the meaning of Art. XIII, § 4 of the South Dakota Constitution.

As amended, SDCL 11–9–36 reads as follows:

Tax incremental bonds or notes are payable only out of the special fund created under § 11–9–31. Each bond or note shall contain such recitals as are necessary to show that it is only so payable and that it does not constitute a general indebtedness of the municipality or a charge against its general taxing power.

We agree with the Court of Appeals of Arizona in concluding that notwithstanding the legislature's characterization of the bonds, we must determine the nature of the bonding transaction from what it is, and not from what it is called. *City of Tucson v. Corbin,* 128 Ariz. 83, 623 P.2d 1239 (App.1981).

In *Gross v. City of Bowdle,* 44 S.D. 132, 182 N.W. 629 (1921), this court held that bonds issued only for the purpose of funding a special assessment and paid by the funds to be collected from the special assessment and not by any general taxes assessed against the property outside the special assessment district did not constitute an indebtedness within the meaning of Art. XIII, § 4. In *Mettet v. City of Yankton,* 71 S.D. 435, 25 N.W.2d 460 (1946), this court held that certain revenue bonds did not constitute a general obligation of the city for Art. XIII, § 4 purposes when the only source of payment of the bonds was the revenue from the operation of a bridge, which revenue was by statute the exclusive source of payment and which an ordinance required to be kept separate from other city funds and from which revenue the bonds were to be paid. *See also Berven v. Bd. of Regents,* 86 S.D. 741, 201 N.W.2d 218 (1972); *Millar v. Barnett,* 88 S.D. 460, 221 N.W.2d 8 (1974); *Clem v. City of Yankton, supra.*

We conclude that those cases are distinguishable from the case before us. We find persuasive the reasoning of the Supreme Court of Iowa in *Richards v. City of Muscatine, supra.* That court made the following analysis:

The taxes which will be used to pay the proposed urban renewal bonds and interest will be general taxes. This is not a case of special assessment tax which was never intended to be used, and could not be used, to meet other expenses of the city. Nor is this a case where the bonds are to be paid from the operating revenues of a municipal enterprise which generates income, such as a power plant.

Ultimately the "credit" of a city is its power to levy general taxes. When it pledges all or part of that power, it pledges its credit and in a realistic sense incurs an obligation. We think the bonds must realistically be treated as a debt for the purposes of § 3.

Clearly the urban renewal bonds would constitute a constitutional debt if they

were payable from the general revenues of the city without limitation. We think the result is not different because § 403.-19 carves out a certain portion of a city's general revenues and limits the liability of the city to those revenues. If the result were otherwise, a city could divide its general revenues into several special funds, each with a bond issue restricted to recourse against its own fund—and thus commit large portions of the city's revenues without regard to § 3. The constitutional debt limitation could thus be virtually nullified.

237 N.W.2d at 64. *Accord City of Tucson v. Corbin, supra; Miller v. Covington Dev. Auth.,* 539 S.W.2d 1 (Ky.1976). Accordingly, we hold that the indebtedness created under the provisions of the Act must be considered subject to the limitations set forth in Art. XIII, § 4. In reaching this conclusion, we have not overlooked decisions from other jurisdictions that have reached a contrary result. *See, e.g., Denver Urban Renewal Auth. v. Byrne, supra; State v. Miami Beach Redev. Agency, supra; South Bend Pub. Transp. Corp. v. City of South Bend, supra; Tribe v. Salt Lake City Corp., supra.*

■ Having concluded that bonds issued under the provisions of the Act constitute a debt, we next consider whether Art. XIII, § 4 requires that an election be held to authorize the issuance of such bonds. To answer this question, it is necessary to read Art. XIII, § 4, in its entirety:

The debt of any county, city, town or civil township shall never exceed five per centum upon the assessed valuation of the taxable property therein, for the year preceding that in which said indebtedness is incurred. The debt of any school district shall never exceed ten per centum upon the assessed valuation of the taxable property therein, for the year preceding that in which said indebtedness is incurred. In estimating the amount of the indebtedness which a municipality or subdivision may incur, the amount of indebtedness contracted prior to the adoption of the Constitution shall be included.

Provided, that any county, municipal corporation, civil township, district, or other subdivision may incur an additional indebtedness, not exceeding ten per centum upon the assessed valuation of the taxable property therein, for the year preceding that in which said indebtedness is incurred, for the purpose of providing water and sewerage, for irrigation, domestic uses, sewerage and other purposes; and

Provided, further, that in a city where the population is eight thousand or more, such city may incur an indebtedness not exceeding eight per centum upon the assessed valuation of the taxable property therein for the year next preceding that in which said indebtedness is incurred for the purpose of constructing street railways, electric lights or other lighting plants.

Provided, further, that no county, municipal corporation, civil township, district or subdivision shall be included within such district or subdivision without a majority vote in favor thereof of the electors of the county, municipal corporation, civil township, district or other subdivision, as the case may be, which is proposed to be included therein, and no such debt shall ever be incurred for any of the purposes in this section provided, unless authorized by a vote in favor thereof by a majority of the electors of such county, municipal corporation, civil township, district or subdivision incurring the same.

For the history of this section, see the historical note, SDCL Vol. 1, p. 478.

Plaintiffs state, without further elaboration and without citing any authority, that the express terms of Art. XIII, § 4, mandate that an election be held as a prerequisite to issuing tax incremental district bonds and that because the Act does not require such an election it is unconstitutional. We do not agree. In *Spangler v. City of Mitchell,* 35 S.D. 335, 152 N.W. 339 (1915), this court carefully reviewed the

history of Art. XIII, § 4, as amended to that time. In response to the argument that no municipal indebtedness could ever be incurred without a vote of the electors, the court held:

It will be seen that this section, as originally adopted, constituted an absolute limitation on the powers of municipalities to incur an indebtedness for any purpose whatever in excess of 5 per centum upon the assessed valuation of the taxable property therein for the year preceding that in which said indebtedness might be incurred, but contained no requirement that any proposed indebtedness should be submitted to a vote of the electors. The first of the two amendments, by way of provisos, authorized an additional indebtedness not exceeding 10 per centum for the purposes therein named; while the second amendment authorized an additional indebtedness not exceeding 8 per centum to be incurred by cities having a population of 8,000 or more, for the specific purposes named in that proviso. The third proviso is, in effect, nothing more than a limitation upon the exercise of the powers conferred by the two added provisos. It declares that:

"No such debt shall ever be incurred for any of the purposes in this section provided, unless authorized by a vote in favor thereof by a majority of the electors of such county, municipal corporation," etc., incurring the same.

This limitation must be construed as extending only to indebtedness created for the purposes named in the preceding provisos. It is true that section 4, taken as a whole, is a limitation upon power of municipalities to create indebtedness for any municipal purpose whatever. But to construe the third proviso otherwise than as indicated would be to hold that no indebtedness for any purpose whatever could be incurred or created by a city, unless first submitted to a vote of the electors. The absurd results of such a construction are too obvious to require discussion. We therefore hold that it is only when the proposed indebtedness is

to be incurred for water, sewerage, etc., or for construction of street railways, electric lights, etc., in excess of the 5 per centum limitation, that the provisions of section 4 of article 13 of the Constitution apply. It is clear, therefore, that the city without a vote may incur indebtedness within the 5 per centum limitation for any municipal purpose when authorized by a law which is not in conflict with any other provision of the Constitution, except that it may not issue bonds without such vote [if required by statute].

35 S.D. at 341–42, 152 N.W. at 341. *See also Williams v. Book,* 75 S.D. 173, 61 N.W.2d 290 (1953); *Robbins v. City of Rapid City,* 71 S.D. 171, 23 N.W.2d 144 (1946); *Nelson v. Lembcke,* 43 S.D. 207, 178 N.W. 981 (1920). In accordance with *Spangler,* then, we hold that Art. XIII, § 4, does not require that an election be held to issue bonds pursuant to the Act so long as the constitutional debt limitation of five percent is not exceeded.

### IV.

Article XIII, § 5, of the South Dakota Constitution provides:

Any city, county, town, school district or any other subdivision incurring indebtedness shall, at or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof when due, and all laws or ordinances providing for the payment of the interest or principal of any debt shall be irrepealable until such debt be paid.

Plaintiffs contend that because the Act does not require or even permit the levy of a tax to pay principal and interest on tax incremental bonds, those sections of the Act which provide that the principal and interest shall be payable only out of the special fund provided by the Act, SDCL 11–9–36 and 11–9–38, do not suffice to satisfy the requirements of Art. XIII, § 5. Again, plaintiffs offer no elaboration in support of this contention, nor do they cite any authority with respect thereto. We conclude that when read in the light of the limitation on

the amount of tax incremental bonds or notes that may be issued under the Act, the dedication of the tax increments to the payment of principal and interest on this indebtedness pursuant to SDCL 11–9–31 constitutes a sufficient guarantee as to satisfy the requirements of Art. XIII, § 5.

## V.

South Dakota Constitution Art. XI, § 8, provides in part that "[n]o tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same, to which the tax only shall be applied ...." Plaintiffs contend that the Act violates this provision by permitting taxes levied by counties, schools or other local governmental units to be applied for purposes other than which they were levied and by authorizing the levying of taxes without stating the objective of the tax.

Plaintiffs rely on *State ex rel. Schneider v. City of Topeka, supra,* in which the Supreme Court of Kansas considered legislation similar to the Act in light of the Kansas constitution's equivalent to Art. XI, § 8. The Kansas court found that a constitutional violation would be present if the Kansas legislature had not amended 190 separate tax levy statutes to include a stated object of a contribution toward the repayment of special obligation bonds to finance a redevelopment project. The court further held that if the legislature in amending the tax levy statutes had overlooked any tax levy statutes, the tax increment contribution from such statutes would have to be eliminated.[3]

■ Article XI, § 8 of the South Dakota Constitution "prevent[s] the diversion of taxes which have been levied or collected, or which are already on hand and appropriated to other purposes." *State ex rel. Parker v. Youngquist,* 69 S.D. 423, 431, 11 N.W.2d 84, 87 (1943). This court has indicated that amending a statute to provide a

different use for taxes to be levied in the future does not violate Art. XI, § 8. *See In re Opinion of the Judges,* 50 S.D. 324, 210 N.W. 186 (1926). The Act has no impact on taxes levied prior to the creation of a tax incremental district.

■ Furthermore, the Act clearly states its objective and impliedly amended other statutes authorizing the levy of property taxes. To require the legislature to amend these statutes to address the objective of the Act would be to insist upon a formalistic act carrying with it no corresponding benefit. The Act is operational only after the tax incremental base has been determined. No taxes previously levied will be diverted to pay for project costs of the district.

## VI.

Article VI, § 12 of the South Dakota Constitution provides that "[n]o ex post facto law, or law impairing the obligation of contracts or making any irrevocable grant of privilege, franchise or immunity, shall be passed."

■ Plaintiffs maintain that by temporarily freezing the assessed value of taxable property in the tax incremental districts, the Act impairs contracts entered into between the taxing jurisdictions and holders of general obligation bonds. We do not agree. Although it is true that Art. VI, § 12, forbids the passage of a law impairing the obligation of contracts entered into by municipalities with holders of instruments representing municipal indebtedness, *see, e.g., Western Surety Co. v. Mellette County,* 63 S.D. 243, 257 N.W. 461 (1934), and *Fremont, E. & M.V.R. Co. v. Pennington County,* 22 S.D. 202, 116 N.W. 75 (1908), we do not view the operation of the Act as in any way limiting the taxes that municipalities may levy to service debts previously incurred. The holders of general obligation bonds lose no

---

**3.** The Supreme Court of Kentucky struck down its tax incremental district legislation on the basis of a state constitutional provision that money collected for the purposes of education in the common school system cannot be spent for other purposes. *Miller v. Covington Dev. Auth.,* 539 S.W.2d 1 (Ky.1976). Since this provision appears to be unique to Kentucky, the rationale of the *Miller* opinion is not applicable to the case at hand.

security to which they are entitled. The tax incremental base is fully available to meet the obligations previously incurred, and thus the holders of those obligations are no worse off than they were prior to the creation of the tax incremental district. Nor can such holders of general obligations complain because the increased assessed valuation brought about by the redevelopment activities undertaken in the tax incremental district is not available as a source of tax revenue to repay those obligations.

### VII.

Plaintiffs contend that the Act violates Art. III, § 21 of the South Dakota Constitution because 1978 S.D.Sess.Laws ch. 91 and 1983 S.D.Sess.Laws ch. 37 embrace more than one subject and because the subject of the acts is not clearly expressed in their titles.

■ 1978 S.D.Sess.Laws ch. 91 is entitled "An Act to provide for tax increment financing for community redevelopment." The amendment to this legislation, 1983 S.D.Sess.Laws ch. 37 is entitled:

An Act to authorize the issuance and registration of bonds of municipal corporations, counties, public hospital districts, sanitary districts and other public bodies as negotiable investment securities under title 57A and to revise certain statutes pertaining to the establishment and operation of tax incremental districts and to declare an emergency.

1978 S.D.Sess.Laws ch. 91 was enacted into the code by 1979 S.D.Sess.Laws ch. 17. Its title is therefore beyond constitutional attack pursuant to the rule that after a statute has been reenacted as part of the code it is no longer assailable because of a claimed defect in the title to the original act when enacted. *State v. Matteson*, 87 S.D. 216, 205 N.W.2d 512 (1973). Our discussion is therefore restricted on this issue to the 1983 legislation.

■ The subject of a law is the public or private concern for which it is enacted, and "all provisions of the Act must relate directly to the same subject, have a natural connection, and not be foreign to the sub-

ject as stated in the title." *McMacken v. State*, 320 N.W.2d 131, 138 (S.D.1982), *aff'd on rehearing*, 325 N.W.2d 60 (S.D.1982). This court stated in *State v. Morgan*, 2 S.D. 32, 43, 48 N.W. 314, 317 (1891):

It is sufficient if the language used in the title, on a fair construction, indicates the purpose of the legislature, so that making every reasonable intendment in favor of the act it may be said that the subject of the law is expressed in the title.

■ The subject is singular "when a number of things constituting a group or class are treated as a unit for general legislation." *State v. Youngquist*, 69 S.D. 592, 594, 13 N.W.2d 296, 297 (1944), *quoted in Independent Bankers Ass'n, supra.* The constitution does not restrict the scope or magnitude of the single subject of a legislative act. *State v. Morgan, supra.* The provisions of an act must be "parts of it, incident to it, or in some reasonable sense auxiliary to the object in view." *State v. Morgan*, 2 S.D. at 43, 48 N.W. at 317.

■ 1983 S.D.Sess.Laws ch. 37 embraces the subject of municipal bond registration and tax incremental financing. A fair construction of the title of this legislation leads to the conclusion that the title adequately expresses the subject. Municipal bond registration and tax incremental financing are not two separate subjects but are merely elements of the larger subject of municipal finance. The title to the 1983 act therefore does not violate the strictures of Art. III, § 21.

### VIII.

■ The next question presented is whether the Act violates Art. III, § 26, of the South Dakota Constitution by unlawfully delegating legislative authority. Plaintiffs argue that the Act violates this constitutional provision by failing to specify with sufficient certainty the conditions of blight that would justify the creation of a tax incremental district and the boundaries of such district. We hold that this contention

is without merit. SDCL 11–9–9, 11–9–10, and 11–9–11 set forth with sufficient specificity and certainty those areas which may be deemed to be blighted areas for the purposes of the operation of the Act. Likewise, SDCL 11–9–8, which requires that at least twenty-five percent, by area, of the real property within a tax incremental district is blighted area, defines with sufficient certainty the boundaries of a tax incremental district. *See Clem v. City of Yankton, supra.*

■■ The second prong of plaintiffs' unlawful delegation attack upon the Act is that the Act somehow unconstitutionally delegates to the municipalities how the tax monies raised as a result of the creation of a tax incremental district shall be spent. Similar attacks to the constitutionality of tax incremental statutes have been rejected by other courts. *See, e.g., Denver Urban Renewal Authority v. Byrne, supra;* *People ex rel. City of Canton v. Crouch, supra; Metro. Dev. & Housing Agency v. Leech,* 591 S.W.2d 427 (Tenn.1979); *City of Sparks v. Best,* 96 Nev. 134, 605 P.2d 638 (1980); *State ex rel. Schneider v. City of Topeka, supra; South Bend Pub. Transp. Co. v. City of South Bend, supra; Redevelopment Agency of City, et al. v. Hayes,* 122 Cal.App.2d 777, 266 P.2d 105 (1954); *Richards v. Muscatine, supra.* We find these authorities to be persuasive, and we therefore hold that the Act does not constitute an unlawful delegation of power within the meaning of Art. III, § 26 of our constitution.

## IX.

■■ Plaintiffs next contend that the Act violates Art. III, § 23 of the South Dakota Constitution inasmuch as it constitutes a special law. We have interpreted Art. III, § 23 as constituting

a prohibition against special or private laws when a general law is applicable. A legislature has successfully avoided this prohibition when a statute is "so framed in good faith that by its terms it should apply to all parts of the state and operate on all members of the class when they come within the scope and purpose of the enactment * * *." Generally, a legislature may define any class it wishes, and so long as all members of that class are treated alike the prohibition against private or special laws is not violated[.]

*Behrns v. Burke,* 89 S.D. 96, 99, 229 N.W.2d 86, 87 (1975) (footnote omitted). *See also Matter of Certain Territorial Elec. Boundaries, etc.,* 281 N.W.2d 65 (S.D.1979). Plaintiffs concede that inasmuch as the Act applies to all incorporated cities or towns within the state, it is difficult to determine how it violates Art. III, § 23. The different limitations upon the percentage of total assessed valuation of taxable property within tax incremental districts as set forth in SDCL 11–9–7 apply uniformly to all cities falling with the respective population demarcations set forth in that statute.

We hold that the Act does not violate South Dakota Constitution Art. III, § 23.

## X.

South Dakota Constitution Art. XI, § 2 provides:

To the end that the burden of taxation may be equitable upon all property, and in order that no property which is made subject to taxation shall escape, the Legislature is empowered to divide all property including moneys and credits as well as physical property into classes and to determine what class or classes of property shall be subject to taxation and what property, if any, shall not be subject to taxation. Taxes shall be uniform on all property of the same class, and shall be levied and collected for public purposes only. Taxes may be imposed upon any and all property including privileges, franchises and licenses to do business in the state. Gross earnings and net incomes may be considered in taxing any and all property, and the valuation of property for taxation purposes shall never exceed the actual value thereof. The Legislature is empowered to impose taxes upon incomes and occupations, and taxes upon incomes may be graduated

and progressive and reasonable exemptions may be provided.

South Dakota Constitution Art. XI, § 7 provides: "All laws exempting property from taxation other than that enumerated in §§ 5 and 6 of this article, shall be void."

Plaintiffs contend that the Act violates these two constitutional provisions because a tax incremental district created thereunder constitutes a separate classification of taxable property by diverting a portion of the tax revenue derived therefrom (the positive tax increments) to the payment of the cost of redevelopment activity within the district. Also, plaintiffs seem to suggest that because the Act exempts the value of the taxable property in the district in excess of the tax incremental base from taxation for general municipal purposes, the Act violates Art. XI, § 7. Neither contention has merit. Article XI, § 2 requires only a uniform classification with respect to the assessment, levy, and collection of taxes, none of which requirements is violated by the Act. Likewise, the Act does not create an exemption within the meaning of Art. XI, § 7. As the Supreme Court of Iowa held with respect to § 403.19 of the Iowa statute: "§ 403.19 can hardly be said to create a partial exemption for the urban renewal developer. He will pay taxes at the same rate as everyone else; § 403.19 only affects the use of taxes after collection." *Richards v. City of Muscatine,* 237 N.W.2d at 60. We agree with defendant cities' contention that because taxable property in a tax incremental district is subject to assessment and levy of property taxes in the same manner and to the extent as all taxable property within a taxing jurisdiction, the property within the tax incremental district cannot be deemed to be rendered exempt from taxation within the meaning of Art. XI, § 7 of the South Dakota Constitution.

## XI.

The next question presented is whether the Act violates Art. XIII, § 1 of the South Dakota Constitution by authorizing a municipality to lend its credit to a private enterprise.

As originally adopted, Art. XIII, § 1 prohibited the state and municipal corporations from lending their credit to private parties except for support of the poor or defense of the state in time of war. *See* historical note, SDCL Vol. 1, at page 472. In its present form, Art. III, § 1 authorizes only the state to give its credit to business enterprises. In *Clem v. City of Yankton, supra,* this court held that Art. XIII, § 1 does not prohibit the legislature from authorizing municipalities to lend their credit to private parties. We think the same analysis applies in the case before us. Moreover, it does not appear that the Act authorizes municipalities to lend their credit to private parties. *See, e.g., Denver Urban Renewal Auth. v. Byrne, supra; Richards v. City of Muscatine, supra; Tribe v. Salt Lake City Corp., supra.*

## XII.

Plaintiffs question whether the Act violates Art. XI, § 8 of the South Dakota Constitution by authorizing the levying of taxes without stating the objective of the tax. We conclude that what we said with respect to the issue raised in paragraph V, *supra,* adequately answers this question in the negative.

## XIII.

Plaintiffs contend that the tax incremental plan adopted by the city of Huron violates Art. XI, § 5 of the South Dakota Constitution and SDCL §§ 11–9–2, 11–9–26, 11–9–27, and 11–9–28 by providing for lease of public improvements and including in the tax increment the payment in lieu of taxes for the leased property.

Article XI, § 5 provides that the "property of the United States and of the state, county and municipal corporation, both real and personal, shall be exempt from taxation . . . ." SDCL 9–54–8 provides, however, that a revenue agreement between a municipality and another person, firm, corporation or governmental entity may pro-

vide for payment of a sum equal to the amount of property taxes which would be due if the lessee or purchaser were the owner of the project and that such payments are to be prorated among the taxing districts involved.

The city of Huron intends to include the payments in lieu of taxes made pursuant to the lease of a parking ramp as part of the tax increment. These payments are authorized under SDCL 9–54–8. *See In re Petition of CM Corp.*, 334 N.W.2d 675 (S.D.1983). Further, these payments are not contrary to the provisions defining tax incremental base and positive tax increments. *See* 11–9–22, 11–9–26, 11–9–27, and 11–9–28.

CONCLUSION

A judgment will be entered dismissing the complaint and denying the application for a writ of prohibition.

All the Justices concur.